**In re OLDE PRAIRIE BLOCK OWNER, LLC, Debtor.**

**No. 10 B 22668.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

Aug. 25, 2011.

See also 452 B.R. 687.

George R. Mesires, Ungaretti & Harris LLP, Chicago, IL, Joanne H. Yi, John E. Gierum, William J. Mantas, Gierum & Mantas, Rosemont, IL, John Ruskusky, Michael K. Desmond, Figliulo & Silverman PC, Chicago, IL, Neil E. Holmen, Walker, Wilcox, Matousek LLP, Chicago, IL, Patrick F. Ross, Richard Henry Tilghman, IV,

Ungaretti & Harris, LLP, Chicago, IL, for Debtor.

## ADDITIONAL CONCLUSIONS OF LAW ON DEBTOR'S COUNTER-CLAIMS [Docket No. 312] TO CENTERPOINT'S CLAIM

JACK B. SCHMETTERER,
Bankruptcy Judge.

The latest dispute in this hotly contested bankruptcy case is whether a Bankruptcy Judge may enter final judgments on five counterclaims filed against the claim of the secured creditor CenterPoint Properties Trust ("CenterPoint"). As to each counterclaim, either the counterclaim was necessarily resolved in order to rule on the creditor's claim, *see Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 2620, 180 L.Ed.2d 475 (2011), or the parties have consented to final adjudication by a Bankruptcy Judge, *see* 28 U.S.C. § 157(c)(2). Final judgments may therefore be entered by a Bankruptcy Judge on all of the counterclaims.[1]

### BACKGROUND

Debtor Olde Prairie Block Owner, LLC, is an aspiring hotel developer that owns two parcels of land adjacent to the McCormick Place convention center in Chicago, Illinois. Debtor funded its activities through borrowing, eventually refinancing its debt with CenterPoint. Debtor was unable to repay CenterPoint's loan when it came due in February 2009, and CenterPoint promptly foreclosed. After extensive litigation in the state court foreclosure

---

1. Findings of Fact and Conclusions of Law were made and entered on June 22, 2011, following trial on CenterPoint's claim and Debtor's Counterclaim Count III. *See In re Olde Prairie Block Owner, LLC,* No. 10 B 22668, 452 B.R. 687 (Bankr.N.D.Ill.) (Docket No. 937). That was the day before *Stern* was published. As ordered, the parties then briefed the question of whether *Stern* does or does not allow entry of final judgments here. This ruling addresses only the issue of a Bankruptcy Judge's authority to enter final orders on counterclaims in this case in light of *Stern* and in no way modifies those Findings of Fact and Conclusions of Law made and entered earlier.

proceeding, Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code, Title 11 U.S.C., on May 18, 2010. CenterPoint filed a Proof of Claim asserting a secured claim for unpaid amounts due under the loan contract between the parties. Debtor objected to CenterPoint's claim and asserted several counterclaims.

Shortly after Debtor and CenterPoint had executed their loan contract, the Metropolitan Pier and Exposition Authority (the "MPEA"), a quasi-governmental body that operates McCormick Place, sought to acquire one of Debtor's parcels through a condemnation proceeding. The condemnation was not resolved until the MPEA abandoned the proceeding in 2010, after Debtor had filed for bankruptcy.

## CenterPoint's Claim and Debtor's Counterclaims

CenterPoint filed a claim for $48,762,842.19 plus interest, fees, and costs. Debtor pleaded five counterclaims against that claim.

In Count I, Debtor sought to rescind its loan contract with CenterPoint on grounds of economic duress. Debtor alleged that CenterPoint wrongfully pressured Debtor to accept onerous terms when it entered into the loan contract, depriving Debtor of free choice by requiring those terms late in negotiations when Debtor had no other financing options.

In Count II, Debtor sought damages for CenterPoint's alleged tortious interference with a sale of one of Debtor's real estate parcels to the MPEA. Debtor alleged that it had a deal to sell a parcel of land to the MPEA in lieu of condemnation, but that CenterPoint improperly induced one of the MPEA's board members, who had founded CenterPoint but was no longer affiliated with the organization, to stop the deal.

Debtor asserted in Count III that CenterPoint breached its contractual duty of good faith and fair dealing. The contract between the parties vested CenterPoint with contractual discretion to control any condemnation proceeding brought against Debtor's real estate. Debtor alleged that CenterPoint violated the duty of good faith and fair dealing by asserting its contractual discretion but then failing to settle the MPEA's condemnation proceeding and by interfering with Debtor's own efforts to settle.

In Count IV, Debtor asserted that CenterPoint breached an extracontractual fiduciary duty. Specifically, Debtor argued that CenterPoint owed a fiduciary duty to Debtor on account of its exclusive control of over the MPEA's condemnation proceeding, and that CenterPoint breached this duty by failing to settle that proceeding.

In Count V, Debtor sought damages for alleged negligence. It argued that CenterPoint had undertaken a duty in controlling the MPEA's condemnation proceeding, but had breached that duty by failing to settle the action.

## Pretrial Proceedings

Under Rules 3007(b) and 7001(2) Fed. R. Bankr.P., a counterclaim to a claim that challenges the validity or extent of a secured creditor's lien should usually proceed as an Adversary proceeding. While a separate Adversary proceeding was not filed here, the counterclaim Counts proceeded as a "contested matter" under Rule 9014 Fed. R. Bankr.P. Pursuant to that Rule, procedural Adversary rules were applied. As required by court order, all of the counterclaims were re-pleaded in compliance with pleading requirements for Adversary proceedings. Pursuant to Rules 7008(a) and 7012(b) Fed. R. Bankr.P., the parties expressly consented in their pleadings to entry of final judgments by a Bankruptcy Judge on all of Debtor's counterclaims, even if any were determined to be non-core matters. (Debtor's Statement in Resp. to Second Amendment to Final Pre-

trial Order, Docket No. 346; CenterPoint Properties Trust's Second Amendment to its Mot. to Dismiss Debtor's Supplemental Am. Objection to Claim No. 1, Docket No. 350.) Pursuant to those consents, the parties consented to the Bankruptcy Judge eventually entering final judgment as to each Counterclaim Count pursuant to 28 U.S.C. § 157(c)(2).

Counts I, II, IV, and V were eventually dismissed on Center–Point's motion for failure to state plausible claims. *In re Olde Prairie Block Owner, LLC,* 442 B.R. 675 (Bankr.N.D.Ill.2011) (Docket No. 660); *In re Olde Prairie Block Owner, LLC,* 441 B.R. 298 (Bankr.N.D.Ill.2010) (Docket No. 369). Given the long history of litigation and ample opportunity for discovery, those dismissals were eventually made with prejudice (Am. Order on Mot. of CenterPoint to Dismiss Debtor's Am. Objection to CenterPoint's Claim, Docket No. 665 (as to Count II); Order, Docket No. 419 (as to Counts I, IV, and V)). However, those rulings were not then certified for immediate appeal pursuant to Rule 54(b) Fed. R.Civ.P. (made applicable by Rule 7054 Fed. R. Bankr.P.), it being determined without objection from the parties that any appeals should follow conclusion of all work on the five Counterclaims.

Count III, in which Debtor asserted a breach of CenterPoint's contractual duty of good faith and fair dealing under Illinois law, remained as the sole Counterclaim to be tried. In asserting this Counterclaim, Debtor sought an award of damages "for the loss suffered by Debtor as a result of CenterPoint's breach of contract." (Supplemental Am. Objection to Claim No. 1, Docket No. 312, at 29.) Essentially, Debtor sought thereby to reduce or offset the CenterPoint claim by $17.7 million in claims purportedly resulting when the MPEA withdrew its condemnation offer in that amount.

**Trial and Ruling on Count III**

Debtor's remaining Counterclaim in Count III was consolidated for trial with CenterPoint's claim, and one trial was held as to both. On June 22, 2011, Findings of Fact and Conclusions of Law were made entered concluding that CenterPoint's claim should be allowed in full (except for some fees and costs that CenterPoint had not proved) and that judgment should be entered in CenterPoint's favor on Debtor's counterclaim in Count III. *In re Olde Prairie Block Owner, LLC,* 452 B.R. 687 (Bankr.N.D.Ill.) (Docket No. 937).

The next day, however, before judgment was entered, the Supreme Court issued its opinion in *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). That decision called into question in certain specified situations the extent of authority of Bankruptcy Judges to enter final judgments on counterclaims to claims filed in their cases. Therefore, the parties here were ordered to submit supplemental post-trial briefs as to whether the *Stern* ruling applied here, and if so how. They did file those briefs.

## DISCUSSION

### Jurisdiction

Subject matter jurisdiction lies under 28 U.S.C. § 1334. This proceeding is before the Court pursuant to 28 U.S.C. § 157 and is referred here by District Court Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. Venue lies under 28 U.S.C. §§ 1408 and 1409.

It must now be determined whether a Bankruptcy Judge appointed under Article I of the Constitution may enter final judgment on any or all of the Debtor's Counterclaim Counts either as a core proceeding under 28 U.S.C. § 157(b) if the Counterclaim rulings are required to adju-

dicate the claim itself, see *Stern*, 131 S.Ct. at 2620, or by consent if a non-core but otherwise related proceeding under 28 U.S.C. § 157(c)(2). In light of *Stern*, each Counterclaim Count must be separately analyzed.

By statute, a Bankruptcy Judge may enter final orders and judgments in core proceedings arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Core proceedings include, among other things, "counterclaims by the estate against persons filing claims against the estate." *Id.* § 157(b)(2)(C). Bankruptcy Judges were thereby authorized by that provision to enter final dispositions of counterclaims against a creditor claim.

■ But a Bankruptcy Judge's authority in that regard has now been held to be limited under the Constitution. As determined in *Stern*, a Bankruptcy Judge "lack[s] the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 131 S.Ct. at 2620. Counterclaims of that nature are instead to be treated as non-core proceedings, see *id.* ("We do not think the removal of counterclaims such as [the debtor's] from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute. . . ."), which a Bankruptcy Judge may hear but not finally adjudicate without consent of the parties, 28 U.S.C. § 157(c).

**Stern v. Marshall**

In *Stern*, a creditor filed a claim against the debtor in bankruptcy court for defamation, arguing that she had directed her lawyers to make false statements about him in the media. 131 S.Ct. at 2601. Those statements related to a dispute the two were having in probate court in which the debtor asserted that the creditor had tortiously interfered with a sizable gift she

had expected from her late husband. *Id.* The debtor responded to the creditor's bankruptcy claim by filing a counterclaim based on her tortious interference claim. *Id.* The Bankruptcy Judge took the counterclaim to trial and entered final judgment in the debtor's favor, and the creditor appealed. *Id.* at 2601–02. The *Stern* opinion recited the complex history of events and appeals that followed. *Id.* at 2602–03.

The opinion in *Stern* held that despite statutory authority to decide the counterclaim as a core matter by final judgment under 28 U.S.C. § 157(b)(2)(C) the Bankruptcy Judge lacked the Constitutional authority to enter final judgment on the debtor's counterclaim. *Id.* at 2601. The opinion reasoned that because judicial power of the United States rests solely with the Judicial Branch under Article III of the Constitution, Congress could allow final adjudication by a judge not appointed under Article III only when the matter involved a "public right." *Id.* at 2608–10. Because Bankruptcy Judges are not judges under Article III, Congress could authorize them to exercise the judicial power by entering final judgment without the parties' consent only when the "public right" exception is implicated. *Id.* at 2608–10, 2615.

*Stern* reviewed prior decisions for the various formulations of the "public rights" exception at length but did not define that exception with a bright line rule. *Id.* at 2611–18. Instead, the opinion discussed the application of the exception to the type of counterclaim at issue in that case. *Id.* at 2611 ("Although our discussion of the public rights exception . . . has not been entirely consistent, and the exception has been the subject of some debate, this case does not fall within any of the various formulations of the concept that appear in this Court's opinions."). It explained that

the key question in determining whether a particular counterclaim falls within the "public rights" exception and is therefore subject to final adjudication by a Bankruptcy Judge without consent of the parties "is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618. The debtor's counterclaim in *Stern* involved different factual and legal determinations from the creditor's claim and was not "necessarily resolved" in the claims allowance process. *Id.* It was a state-law claim that existed without regard to the bankruptcy case. *Id.* The opinion therefore held that the debtor's counterclaim did not come under the "public rights" exception and concluded that the Bankruptcy Judge lacked authority to enter final judgment on that counterclaim. *See id.* at 2618, 2620.

In responding to concerns by the four dissenting Justices, the *Stern* opinion specified that its holding is a "narrow" one that "does not change all that much." *Id.* The opinion did not hold 28 U.S.C. § 157(b)(2)(C) to be facially unconstitutional. Rather, the Court limited the holding to the debtor's counterclaim and others substantially like it—namely, state law counterclaims that are not resolved in the process of ruling on a creditor's proof of claim. *Id.* at 2619–20. Indeed, the narrow effect of *Stern* is summed up in the holding itself:

> Article III of the Constitution provides that the judicial power of the United States may be vested only in courts whose judges enjoy the protections set forth in that Article. We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not re-

solved in the process of ruling on a creditor's proof of claim.

*Id.* at 2620.

The opinion certainly did not hold that a Bankruptcy Judge cannot ever decide a state law issue. Indeed, a large portion of the work of a Bankruptcy Judge involves actions in which non-bankruptcy issues must be decided and that "stem from the bankruptcy itself or would necessarily be resolved in the claims allowance process," *id.* at 2618, for example, claims disputes, actions to bar dischargeability, motions for stay relief, and others. Those issues are likely within the "public rights" exception as defined in *Stern*.

**Debtor's Counterclaims**

**A. Counts I and III Are Core Proceedings in Which a Bankruptcy Judge May Enter Final Judgment Because They Are Necessarily Resolved by a Ruling on CenterPoint's Claim**

CenterPoint filed a proof of claim in Debtor's bankruptcy case, asserting a claim that arose from Debtor's default under a loan contract with CenterPoint. Only two of Debtor's counterclaims—Counts I and III—related directly to that contract and had to be resolved in order to rule on CenterPoint's claim.

Count I of Debtor's Counterclaim sought "rescission" based on economic duress. Although Debtor framed this Count in terms of affirmative relief in its Objection and Counterclaim, economic duress is actually an affirmative defense to a contract. *Krilich v. Am. Nat'l Bank & Trust Co. of Chi.*, 334 Ill.App.3d 563, 268 Ill.Dec. 531, 778 N.E.2d 1153, 1162 (2002). Before CenterPoint's contract claim could be allowed, it was necessary to resolve any defenses Debtor asserted, including economic duress. Thus, Count I was a core proceeding under 28 U.S.C. § 157(b)(2)(C)

that a Bankruptcy Judge may still finally adjudicate as a necessary part of the process to adjudicate the Claim itself.

■ Debtor's Counterclaim Count III asserted that CenterPoint's breached the contractual duty of good faith and fair dealing. Debtor sought an award of damages "for the loss suffered by Debtor as a result of CenterPoint's breach of contract." (Supplemental Am. Objection to Claim No. 1, Docket No. 312, at 29.) This Count was also defensive in nature: under certain circumstances, a party that has not performed a material term and has no legal excuse may not be able to recover on the contract. *See Normand v. Orkin Exterminating Co.*, 193 F.3d 908, 911–12 (7th Cir.1999). If CenterPoint had breached the duty of good faith and fair dealing, its claim would at least have been reduced by the setoff of $17.7 million claimed by Debtor. Count III of the Counterclaim had to be resolved in order to rule on Center-Point's claim and determine the amount due on the claim itself, and therefore remains a core proceeding subject to final adjudication by a Bankruptcy Judge as allowed under *Stern.*

Nonetheless, even if that ground were not available under *Stern* for entry of final judgment on those two Counts, a second ground exists: the parties consented to final judgment on all five Counts.

**B. A Bankruptcy Judge May Enter Final Judgment on All Counts Because the Parties Consented to Entry of Final Judgment under 28 U.S.C. § 157(c)(2)**

■ Counts II, IV, and V each required legal and factual determinations different from CenterPoint's contract claim. In Count II, Debtor's tortious interference counterclaim, it had to be determined whether CenterPoint took active and wrongful steps to prevent Debtor from settling a condemnation proceeding.

Counts IV and V required a determination whether CenterPoint owed Debtor an extracontractual fiduciary duty or duty of reasonable care. These Counts do have some factual overlap with Center–Point's claim: for example, whether CenterPoint took control of the condemnation proceeding and what it did (or did not do) if it took control. But determining enforceability of a contract in CenterPoint's Claim and Debtor's Counts I and III is different from deciding in Debtor's other Counts whether the parties owed each other duties under state law that were independent of the contract and whether those duties were breached. Like the counterclaim at issue in *Stern,* Counts II, IV, and V are state law claims that are not necessarily resolved in ruling on CenterPoint's proof of claim. Therefore, although those counterclaims were core proceedings under statute, 28 U.S.C. § 157(b)(2)(C), under the Constitution for reasons discussed in *Stern,* they must be treated as non-core proceedings and are not subject to final adjudication by a Bankruptcy Judge without consent of the parties.

But that does not end the inquiry because such consent was given for entry of final judgments by the Bankruptcy Judge in all five Counts.

■ A Bankruptcy Judge may enter final judgment in a non-core proceeding that is otherwise related to a bankruptcy case if the parties consent. 28 U.S.C. § 157(c)(2). Otherwise, the Bankruptcy Judge must submit proposed findings of fact and conclusions of law to the district court, which may enter final judgment in the proceeding after *de novo* review of any findings or conclusions that the parties have objected to. *Id.* § 157(c)(1). A non-core proceeding is "related" to a bankruptcy case only when "it affects the amount of property available for distribution or the allocation

of property among creditors." *In re Xonics, Inc.,* 813 F.2d 127, 130 (7th Cir.1987).

■ Counterclaims like that in *Stern* must under the Constitution be treated as non-core proceedings, 131 S.Ct. at 2620, so they are subject to that consent procedure. Thus, parties may consent to final adjudication by a Bankruptcy Judge of counterclaims not necessarily resolved by a ruling on a creditor's claim, even though that Judge would not otherwise have that authority.

Consent given for final ruling on non-core matters has widespread use and importance in bankruptcy cases in this District, to such an extent that relatively few non-core proceedings go to District Judges for entry of final judgments. The statutory right of parties to agree to final adjudication of non-core proceedings by Bankruptcy Judges is therefore a significant part of the efficiency of the bankruptcy process under which the role of the District Judge is usually that of adjudging appeals from the consented final judgments.

Entry of judgment by consent is a rational decision by the parties: it lowers the workload for the parties and for the District Court. Final judgments entered by a Bankruptcy Judge may be appealed to a District Court, 28 U.S.C. § 158(a), which reviews the Bankruptcy Judge's legal conclusions *de novo* and its findings of fact for clear error, *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman),* 629 F.3d 761, 766 (7th Cir.2011). But if a Bankruptcy Judge only submits proposed findings of fact and conclusions of law to the District Court, that court must review *de novo* all findings and conclusions that the parties object to. 28 U.S.C. § 157(c)(1). Just as parties in a federal civil case often consent to final adjudication by a Magistrate Judge, *see* 28 U.S.C. § 636(c), parties may seek final adjudication of non-core proceedings by a Bankruptcy Judge in order to resolve the proceeding faster without having to wait for time on a District Judge's very busy docket.

■ The Supreme Court's opinion in *Stern* in no way altered the system of final adjudication by consent embodied in § 157(c)(2). It is true, as Debtor argues, that parties cannot confer subject matter jurisdiction on a court by consent. *See Farmer v. Litscher,* 303 F.3d 840, 843–44 (7th Cir.2002) (*citing Commodity Futures Trading Comm'n v. Schor,* 478 U.S. 833, 850–51, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)). But although bankruptcy practitioners and judges often use the shorthand terms "core jurisdiction" and "related jurisdiction" when discussing § 157, that provision is not jurisdictional. Rather, as *Stern* emphasized:

> Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. See § 157(b)(1), (c)(1). *That allocation does not implicate questions of subject matter jurisdiction.* See § 157(c)(2) (parties may consent to entry of final judgment by Bankruptcy Judge in non-core case).

131 S.Ct. at 2607 (emphasis supplied). *See also Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co.,* 649 F.3d 539, 551 (7th Cir.2011) (discussing *Stern* and explaining that "the allocation of jurisdiction between the bankruptcy and district courts does not speak to a party's ability to receive final judgment in a bankruptcy proceeding; rather it stipulates which court has the authority to render the judgment").

■ Subject matter jurisdiction over bankruptcy cases is conferred by statute on District Courts, 28 U.S.C. § 1334, who may then refer those cases to Bankruptcy Judges, *id.* § 157(a). *Stern* addressed only what a Bankruptcy Judge may do once a case is referred to it, not whether that judge has jurisdiction to hear the case

at all. 131 S.Ct. at 2620. As the *Stern* opinion was careful to point out,

> [the creditor] has not argued that the bankruptcy courts are barred from "hearing" all counterclaims or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that finally decides them.

*Id.* (some internal quotation marks omitted).

The issue at hand, therefore, is not whether the parties here could consent to a Bankruptcy Judge's jurisdiction, but whether they could consent to a Bankruptcy Judge's power to enter final judgment.

■ This issue has importance outside the bankruptcy system. If *Stern* had destroyed the power of Bankruptcy Judges to enter final judgments by consent in non-core but otherwise related proceedings, that would have called into question the power of Magistrate Judges and other Article I judicial officers to make final adjudication by consent and thereby required a vast increased burden on the District Judges. To the contrary, it is well established "that litigants may waive their personal right to have an Article III judge preside over a civil trial." *Peretz v. United States*, 501 U.S. 923, 936, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991) (*citing Schor*, 478 U.S. at 848, 106 S.Ct. 3245). This concept is not peculiar to the bankruptcy system: Magistrate Judges, who like Bankruptcy Judges are also Article I judges, can try civil matters and enter final judgments if the parties consent. 28 U.S.C. § 636(c). The constitutionality of that system has been consistently upheld. *Goldstein v. Kelleher*, 728 F.2d 32, 34–35 (1st Cir.1984); *Collins v. Foreman*, 729 F.2d 108, 109 (2d Cir.1984); *Wharton–Thomas v. United States*, 721 F.2d 922, 924–930 (3d Cir.1983); *Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1284–85 (4th Cir.1985); *Puryear v. Ede's, Ltd.*,

731 F.2d 1153, 1154 (5th Cir.1984); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755 (6th Cir.1985); *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1038 (7th Cir.1984); *Lehman Bros. Kuhn Loeb, Inc. v. Clark Oil & Ref. Corp.*, 739 F.2d 1313, 1314 (8th Cir.1984) (*en banc*); *Pacemaker Diagnostic Clinic of Am., Inc. v. Instromedix, Inc.*, 725 F.2d 537, 540 (9th Cir.1984) (*en banc*); *Fields v. Wash. Metro. Area Transit Auth.*, 743 F.2d 890, 893 (D.C.Cir. 1984).

■ As discussed above, Counts II, IV, and V of Debtor's Counterclaim are non-core proceedings under *Stern* because they were not necessarily resolved in ruling on CenterPoint's claim. But those and the other Counts are "related to" Debtor's bankruptcy case: if successful, they would have limited liability to Center–Point, recovered damages, and otherwise increased the potential recovery of unsecured creditors. Therefore, a Bankruptcy Judge could at least hear those Counts under 28 U.S.C. § 157(c)(1) without consent. Even if Counts I and III could not be treated under the *Stern* exception for counterclaims that must be decided in order to decide a claim against the bankruptcy estate, they would also then be "related proceedings" as defined by our Circuit in *Xonics*, 813 F.2d at 130, therefore susceptible to consent for final judgment under § 157(c)(2).

Rules pertaining to Adversary proceedings provide a structure for the parties to inform the Court as to their positions regarding the role of the Bankruptcy Judge. Under Rules 7008(a) and 7012(b) Fed. R. Bankr.P., parties must state in their pleadings whether the proceeding is core or non-core, and if the latter, whether they consent to final adjudication by the Bankruptcy Judge. Pursuant to those provisions, Debtor and CenterPoint expressly consented in their pleadings to final adju-

dication by a Bankruptcy Judge of all of Debtor's Counterclaims, even if they were later determined to be non-core proceedings. Their power to consent recognized by 28 U.S.C. § 157(c)(2) was not disturbed by *Stern*.

Debtor cannot undo that consent now that it is faced with unfavorable rulings following motions resulting in dismissal of four Counts with prejudice and losing after trial of Count III. Withdrawal of consent would require a motion and showing of good cause. *See Carter v. Sea Land Servs., Inc.*, 816 F.2d 1018, 1021 (5th Cir.1987) (there is "no absolute right to withdraw a validly given consent to trial before a magistrate" and motion to do so "may be granted only for good cause"). Good cause can hardly be shown at this stage of proceedings once Debtor has litigated to the end and lost. Not only has Debtor not even sought to withdraw its consent, the context and long history of litigation proceedings between the parties would render such withdrawal at this stage singularly inappropriate. Despite a long period of litigation before and after the bankruptcy filing and after ample discovery, Debtor could not even make its assertions in Counts I, II, IV, and V into plausible pleadings that could survive dismissal motions. And its trial evidence in Count III showed in the end that loss of the condemnation proceeds was due to its long effort to get a better offer until the offer was lost when the MPEA withdrew it, a loss not due to the creditor's actions or omissions.

### CONCLUSION

Counts I and III of Debtor's Counterclaim to CenterPoint's claim are core proceedings under statute and are not limited by *Stern*, both because they are necessarily resolved in ruling on Center–Point's claim and because the parties consented to final judgment. While Counts II, IV, and V of Debtor's Counterclaim are statutorily

core, under *Stern* they must be treated as non-core proceedings. They do relate to Debtor's bankruptcy case under *Xonics, supra,* and both Debtor and CenterPoint expressly consented to final adjudication of those and the other Counts by a Bankruptcy Judge.

Therefore, a Bankruptcy Judge may enter final judgment disposing of all Counts of Debtor's Counterclaim. By separate order, CenterPoint's counsel will be required to submit final judgment resolving Count III and orders permitting appeal of orders dismissing the other Counts.