**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARPENTERS PENSION TRUST FUND FOR NORTHERN CALIFORNIA, *Appellant*, <br><br> v. <br><br> MICHAEL GORDON MOXLEY, AKA MGM's Cabinet Installation Services, *Appellee*. | No. 11-16133 <br><br> D.C. No. 3:10-cv-00756-RS <br><br><br> OPINION |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted
June 13, 2013—San Francisco, California

Filed August 20, 2013

Before: Mary M. Schroeder and Consuelo M. Callahan,
Circuit Judges, and Sarah S. Vance, Chief District Judge.\*

Opinion by Judge Schroeder

---

\* The Honorable Sarah S. Vance, Chief United States District Judge for the Eastern District of Louisiana, sitting by designation.

## SUMMARY**

### Bankruptcy

The panel affirmed the district court's order affirming the judgment of the bankruptcy court in an adversary proceeding regarding the dischargeability in bankruptcy of a construction industry contractor's "withdrawal liability" to a pension fund following the expiration of the collective bargaining agreement under which the fund was administered.

Distinguishing *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the panel held that the bankruptcy court had jurisdiction to adjudicate the dischargeability of the pension fund's claim against the contractor because a dischargeability determination is central to federal bankruptcy proceedings and therefore constitutes a public rights dispute that a bankruptcy court may decide.

The contractor was subject to withdrawal liability under the Employee Retirement Income Security Act because he continued doing work covered by the collective bargaining agreement after it expired.  The panel held that this debt was dischargeable because it did not qualify as a debt created via defalcation by a fiduciary under 11 U.S.C. § 523(a)(4).  The panel concluded that the contractor was not a fiduciary of the fund pursuant to ERISA because he had nothing to do with the fund's administration or investment policy and did not exercise control respecting disposition of its assets.  The panel held that the fund's assets did not include the unpaid

** This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

withdrawal liability.  It reasoned that the withdrawal liability was a statutory obligation, and was different from unpaid contributions arising from contractual obligations under the collective bargaining agreement.  The panel held that the contractor's failure to challenge the withdrawal liability amount in arbitration did not act as a waiver of his right to discharge the debt.

## COUNSEL

Christian L. Raisner (argued), Emily P. Rich, Roberta D. Perkins, Weinberg, Roger & Rosenfeld, Alameda, California, for Appellant.

Wayne A. Silver (argued), Sunnyvale, California; R. Kenneth Bauer, Law Offices of R. Kenneth Bauer, Walnut Creek, California, for Appellee.

## OPINION

SCHROEDER, Circuit Judge:

## INTRODUCTION

When contractors in the construction industry stop working under the terms of a collective bargaining agreement, but continue in business, they cannot simply stop making payments to the pension fund administered under that agreement.  Pursuant to the Employee Retirement Income Security Act ("ERISA"), they are liable to the fund in the amount determined necessary to ensure payment of benefits to employees whose rights have vested.  29 U.S.C. §§ 1381,

1391. The issue in this appeal is whether that "withdrawal liability" is dischargeable in bankruptcy. The answer requires some analysis of possible differences between withdrawal liability and liability for delinquent contributions, but we ultimately agree with the result reached by both the bankruptcy court and the district court that the debt is dischargeable. The pension fund cannot establish that the debtor is a fiduciary with respect to money it owes as withdrawal liability.

## BACKGROUND

The debtor is Michael G. Moxley, who did business as MGM's Cabinet Installation Service. In 1999 he became a signatory to the multiemployer bargaining agreement entitled "The 46 Northern California Counties Carpenter's Master Agreement of Northern California," (the "Agreement"). He was required under the Agreement to make contributions to the Carpenters Pension Trust Fund for Northern California (the "Fund"). When the Agreement expired in June 2004, he was no longer a signatory to a collective bargaining agreement. He stopped making payments to the Fund, but continued doing carpentry work in the Bay Area.

In March of 2005 the Fund notified Moxley that because he was still doing work covered by the Agreement, he was subject to withdrawal liability pursuant to 29 U.S.C. § 1381. That amount had been determined to be $172,045 and for purposes of this appeal is not disputed. The Fund filed suit in United States District Court for the Northern District of California, but proceedings there were stayed when Moxley filed for bankruptcy.

In the bankruptcy court, Moxley sought a discharge of his debt to the Fund, and the Fund filed a complaint under 11 U.S.C. § 523(c) to prevent discharge. The Fund sought to establish that the debt qualified as one created via defalcation by a fiduciary under § 523(a)(4). It provides that a bankruptcy discharge "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity . . . ." *Id.*

The Fund's position was that because it is a trust fund, and those who administer, own, or control assets of a trust fund are fiduciaries, Moxley was a fiduciary for funds in his control representing the amount of withdrawal liability that he should pay to the Fund. In order to prevent the discharge, the Fund therefore had to establish both that Moxley was acting in a fiduciary capacity with respect to the money he had not paid to the Fund, and that the failure to pay constituted "defalcation" within the meaning of the Code. We need not reach the issue of defalcation, because we determine Moxley was not a fiduciary.

In trying to establish that Moxley was a fiduciary under the Bankruptcy Code, the Fund faces a number of hurdles, the first, of course, is having to show that Moxley was a fiduciary of the Fund pursuant to ERISA. Fiduciaries under ERISA are defined as entities who manage a plan, give investment advice to a plan, or control assets of a plan. ERISA provides in 29 U.S.C. § 1002(21)(A) that a fiduciary is one who:

> [1] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, [2] renders investment advice for

> a fee or other compensation, direct or indirect,
> with respect to any moneys or other property
> of such plan, or has any authority or
> responsibility to do so, or [3] has any
> discretionary authority or discretionary
> responsibility in the administration of such
> plan.

Since Moxley has had nothing to do with the administration or investment policy of the plan, the only conceivable part of the definition that might apply is one who "exercises . . . control respecting . . . disposition of [the Fund's] assets." *Id.* The Fund therefore argued in the bankruptcy court that its "assets" include money that is owed to the Fund, and that Moxley has exercised control over that money so as to become a fiduciary.

The problem with this simple proposition is that money that is owed to the Fund is not in the Fund, and is therefore not yet a Fund "asset." That is what this court held in *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223 (9th Cir. 2000). There, we dealt with a claim brought by employees against their employers, alleging that the employers' failure to contribute adequately to the employee benefit plan constituted a prohibited transaction under ERISA. While we rejected the contention that the employers had failed to contribute adequately to the plan, we also said that the claim failed for the independent reason that unpaid funds are not plan assets because they have not yet been paid. *Id.* at 1234. "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation." *Id.*

Thus, the bankruptcy court in this case, relying on *Cline* and our earlier opinion in *Collins v. Pension & Ins. Comm. of S. Cal. Rock Products & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279 (9th Cir. 1998), held that Moxley was not a fiduciary with respect to the debt he owed the Fund.  It said that the Fund's theory conflicted with *Cline*, *Collins*, and "numerous cases . . . holding that persons owing contributions are not automatically ERISA fiduciaries."

In its appeal to the district court, therefore, the Fund argued that money a contractor owed to the Fund as a result of the bargaining agreement could be considered an asset of the Fund if the agreement itself so provided.  The Fund contended this agreement did, and pointed to the Article of the Agreement establishing the Fund and the employers' obligations to it.  In relevant part, the Agreement defined the Fund as consisting of  "all Contributions required by the Collective Bargaining Agreement . . . to be made for the establishment and maintenance of the Pension Plan . . . ."

The Fund contended that Moxley's debt to the Fund was in the nature of "contributions required . . . to be made," and, for that reason, was within the Agreement's definition of plan assets.  This would make Moxley a fiduciary by virtue of his control over those assets.  *See Trustees of S. Cal Pipe Trades Health & Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F. Supp. 2d 1156, 1163 (C.D. Cal. 2006) (concluding that unpaid contributions, though generally not plan assets, could be made plan assets by contract between the employer and the union).

Moxley pointed out, however, that under the Fund's theory he became a fiduciary only because he did not make the payment.  This court has held that where a statute creates

a fiduciary relationship, as the Fund contends ERISA does here, that fiduciary relationship will not be recognized for the purposes of § 523(a)(4) if the claimed fiduciary relationship resulted from the wrongdoing that created the debt. *In re Hemmeter*, 242 F.3d 1186, 1190 (9th Cir. 2001). The fiduciary status has to be in existence before the debt was owed. *Id.* (the fiduciary obligations must exist "prior to the alleged wrongdoing."). The district court agreed that under the Fund's theory, Moxley's own wrongdoing, *i.e.*, his failure to pay, created the asserted fiduciary relationship. Relying on *Hemmeter*, the district court affirmed the bankruptcy court.

The district court also rejected the Fund's contention that Moxley had waived his right to discharge the debt in bankruptcy by failing to contest the debt in arbitration. ERISA requires that all disputes over withdrawal liability be resolved by arbitration. *Teamsters Pension Trust Fund-Bd. of Trustees of W. Conference v. Allyn Transp. Co.*, 832 F.2d 502, 504 (9th Cir. 1987). The district court ruled that this was not a dispute over the existence of the liability, but an issue of discharge governed by § 523(a)(4). The court rejected the Fund's contention that the ERISA arbitration provision can override the Bankruptcy Code.

In this appeal, the Fund contends that Moxley is a fiduciary of the Fund because he controlled money that he owed to the Fund for withdrawal liability, which his agreement with the union recognized as an asset of the Fund. The Fund also reasserts its argument that Moxley's failure to contest the withdrawal liability in arbitration resulted in a waiver of his right to seek a discharge in bankruptcy. Moxley raises a threshold jurisdictional argument that Article III of the Constitution prohibits the bankruptcy court from adjudicating the Fund's claim, so we turn to that first.

## DISCUSSION

### I. The Bankruptcy Court Had Jurisdiction to Adjudicate the Dischargeability of the Fund's Claim Against Moxley

After the district court's decision in this case, the Supreme Court decided *Stern v. Marshall*, 131 S. Ct. 2594, 2611 (2011), holding that a bankruptcy court could not adjudicate a counterclaim for tortious interference because a bankruptcy court is not an Article III court and the counterclaim did not involve "public rights." Bankruptcy judges, because they do not have the tenure and salary protections of Article III, may not exercise the judicial power of the United States, except in cases involving public rights. *Id.* at 2609–11. Public rights are identified as those rights closely related to a federal government function. *Id.* at 2613.

Moxley therefore asserts a threshold objection to the bankruptcy court's jurisdiction to decide dischargeability in this case because he claims it has no connection to any federal function. The contention is without substance, because the dischargeability determination is central to federal bankruptcy proceedings. *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 363–64 (2006). The dischargeability determination is necessarily resolved during the process of allowing or disallowing claims against the estate, and therefore constitutes a public rights dispute that the bankruptcy court may decide. *See In re Bellingham Ins. Agency, Inc.*, 702 F.3d 553, 564–65 (9th Cir. 2012) (concluding that public rights disputes in bankruptcy are those that "necessarily ha[ve] to be resolved in the course of the claims-allowance process"); *see also In re Global Technovations Inc.*, 694 F.3d 705, 721–22 (6th Cir. 2012)

(bankruptcy court has jurisdiction over disputes that must be resolved before ruling on proof of claim).

## II. Moxley Is Not a Fiduciary of the Fund Because the Unpaid Withdrawal Liability Is Not an Asset of the Fund

The district court held that Moxley was not a fiduciary under § 523(a)(4) with respect to money he owes as withdrawal liability, because the Bankruptcy Code requires a fiduciary relationship to exist before the bad act of nonpayment, rather than as a result of it. *See Hemmeter*, 242 F.3d at 1190. In this court, the Fund makes a more creative argument. It contends Moxley did not become a fiduciary as a result of his failure to pay this debt, but instead has been a fiduciary with respect to all the contributions he was ever required to pay in to the Fund, including withdrawal liability.

This contention is grounded in the language of the Agreement defining the plan assets to include "all contributions required . . . to be made" to the Fund. There is some district court and bankruptcy court authority supporting the proposition that an employer is a fiduciary under the Bankruptcy Code with respect to unpaid contributions, where the collective bargaining agreement includes unpaid contributions as plan assets. *See Bos v. Bd. of Trustees of Carpenters Health & Welfare Trust Fund for California*, No. 2:12-CV-02026-MCE, 2013 WL 943520, at *3 n.6 (E.D. Cal. Mar. 11, 2013) (citing *Hemmeter*, 242 F.3d at 1190); *In re O'Quinn*, 374 B.R. 171, 181–82 (Bankr. M.D.N.C. 2007). According to these cases, it is ERISA and the provision of the particular collective bargaining agreement, and not the contractor's nonpayment of the debt, that are responsible for

a fiduciary relationship.   If the agreement creates the obligation to pay contributions and defines plan assets to include the unpaid contributions, then ERISA makes the person who controls those plan assets a fiduciary.  Section 523(a)(4) prevents discharge from a "debt . . . while acting in a fiduciary capacity."  As the court in *O'Quinn* stated, "It is the *obligations* of the fiduciary, however, as opposed to the debt, that must preexist the alleged wrongdoing.   In the Section 523(a)(4) context, a context in which one party's claim is grounded in the other's wrongdoing, the *debt* will always arise at the time of the wrongdoing."  *O'Quinn*, 374 B.R. at 182 (emphasis in original).

Relying on these cases involving the obligation to make contributions, the Fund makes a persuasive case that, given the provisions of this agreement, unpaid contributions required by the Agreement can be considered plan assets. Here, however, we do not have to decide the question of whether unpaid contributions are plan assets.  This is because we do not deal with unpaid contributions arising from contractual obligations.

This case involves withdrawal liability under ERISA that is imposed because the employer no longer has a contractual obligation to contribute.  This obligation is statutory.  ERISA recognizes that contributions, on the other hand, are contractual obligations that ERISA enforces, but does not create. *See Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986) ("For an employer to be obligated to make employee benefit contributions to a trust fund, there must exist a binding collective bargaining agreement.").

For an employer, like Moxley, in the building and construction industry, withdrawal liability does not arise until

the "employer ceases to have an obligation to contribute under the plan," and the employer "continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required."   29 U.S.C.  §  1383(b).   Because withdrawal liability does not arise until the employer ceases to have an obligation to contribute to the plan, it cannot be considered an unpaid contribution under the collective bargaining agreement.

Withdrawal liability is based on the recognition that, even though the employer no longer has a contractual obligation to pay, there may be employees whose rights have vested and whom the plan must pay.  "When an employer withdraws from [] a plan, the plan remains liable to the employees who have vested pension rights, though it no longer can look to the employer to contribute additional funds to cover these obligations."  *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. CPC Logistics, Inc.*, 698 F.3d 346, 347–49 (7th Cir. 2012) (describing withdrawal liability and how it is calculated).  Withdrawal liability acts as an "exit price equal to [the employer's] pro rata share of the pension plan's funding shortfall."  *Id.* at 347.

As a result, an employer who has made all of the required contributions before leaving the agreement may still have a withdrawal liability.   "Even when, upon an employer's withdrawal, that employer and every other participating employer has made every contribution that ERISA required of them, the plan may nonetheless be underfunded, resulting in withdrawal liability for the departing employer."  *In re CD Realty Partners*, 205 B.R. 651, 658 n.8 (Bankr. D. Mass. 1997).  In sum, withdrawal liability is imposed by ERISA to account for the pension fund's needs going forward, and

therefore is distinct from the contributions required to be made by the plan agreements.

The Fund points to § 1451(b) of ERISA that establishes the same procedural framework for recovering delinquent contributions and unpaid withdrawal liability. The Fund contends that unpaid contributions and withdrawal liability are thus to be treated as substantively the same. This contention is incorrect.

The provision at issue reads:

> In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title).

29 U.S.C. § 1451(b). This provision means only that the venue, statute of limitations, and right to receive costs and expenses in actions to enforce withdrawal liability are the same as those applicable to actions to collect delinquent plan contributions. *See Trs. of Amalgagmated Ins. Fund v. Geltman Indus., Inc.*, 784 F.2d 926, 931–32 (9th Cir. 1986) (explaining that the attorney's fees provision applies to actions to recover contributions under 29 U.S.C. § 1145 and therefore also applies to "actions to collect unpaid employer withdrawal liabilities"). It does not mean that they are otherwise similar obligations. One obligation is created by statute, the other by contract.

Accordingly, even if we assume that unpaid contributions can be considered assets of the Fund under the particular provisions of this agreement, and non-dischargeable, the withdrawal liability is not an unpaid contribution.    We therefore agree with the conclusion of both the bankruptcy and district court that this withdrawal liability is dischargeable.

### III.    Moxley's Failure to Challenge the Withdrawal Liability Amount in Arbitration Did Not Act as a Waiver of His Right to Discharge the Debt

The Fund continues to assert its position, rejected by the district court, that Moxley waived his right to a discharge of his withdrawal liability because he failed to challenge the amount or existence of the liability in arbitration.    The Multiemployer Pension Plan Amendments Acts, 29 U.S.C. § 1401(a)(1), states that all disputes over withdrawal liability must be arbitrated, *Allyn Transp. Co.*, 832 F.2d at 504, and the Fund claims that an employer cannot seek a discharge of a debt for withdrawal liability, if the employer failed to dispute the withdrawal liability in arbitration.

The arbitration provision of ERISA expressly applies where an employer contests the existence or the amount of an alleged liability.    29 U.S.C. § 1401.    Moxley does not here dispute the amount or existence of the withdrawal liability. He has invoked the provisions of the Bankruptcy Code to discharge existing obligations and receive a "fresh start." *Cent. Va. Cmty. Coll.*, 546 U.S. at 364.    The district court correctly held that this case is governed by the dischargeability provisions of the Bankruptcy Code. 11 U.S.C. § 523.

## CONCLUSION

The district court's order affirming the judgment of the bankruptcy court is **AFFIRMED**.