**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GCIU-EMPLOYER RETIREMENT FUND; BOARD OF TRUSTEES OF THE GCIU-EMPLOYER RETIREMENT FUND, *Plaintiffs-Counter-Defendants-Appellees*, | No. 17-55667 <br><br> D.C. Nos. 2:16-cv-03391-ODW-AFM 2:16-cv-03418-ODW-AFM |
| v. | |
| QUAD/GRAPHICS, INC., *Defendant-Counter-Plaintiff-Appellant.* | OPINION |

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted October 10, 2018
Pasadena, California

Filed December 7, 2018

Before: Andrew D. Hurwitz and John B. Owens, Circuit
Judges, and Gregory A. Presnell,* District Judge.

Opinion by Judge Hurwitz

---

* The Honorable Gregory A. Presnell, United States District Judge
for the Middle District of Florida, sitting by designation.

## SUMMARY[**]

### Multiemployer Pension Plan Amendments Act

The panel affirmed the district court's judgment against an employer in an action brought under the Multiemployer Pension Plan Amendments Act of 1980.

The employer withdrew from a multiemployer pension plan after its employees voted to decertify a union as their bargaining representative. Under the terms of a collective bargaining agreement with the union, the employer had been required to contribute to the plan. At issue was whether the plan correctly calculated the employer's withdrawal liability under the MPPAA. Reviewing an arbitrator's decision de novo, the district court concluded that the plan's calculation was correct.

Affirming, the panel held that the plan correctly applied a credit for a prior partial withdrawal under 29 U.S.C. § 1386(b) against the employer's complete withdrawal before calculating the twenty-year limitation on annual payments provided for in 29 U.S.C. § 1399(c)(1)(B).

The panel addressed other issues in a concurrently-filed memorandum disposition.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mark Casciari (argued), Seyfarth Shaw LLP, Chicago, Illinois; Kiran A. Seldon, Seyfarth Shaw LLP, Los Angeles, California; for Defendant-Counter-Plaintiff-Appellant.

Anthony T. Ditty (argued), Law Offices of Anthony T. Ditty, Escondido, California; Valentina S. Mindirgasova, Cornwell & Baldwin, Escondido, California; for Plaintiffs-Counter-Defendants-Appellees.

**OPINION**

HURWITZ, Circuit Judge:

Under the terms of a collective bargaining agreement ("CBA") with the Graphic Communications Conference, International Brotherhood of Teamsters, Local 826-C (the "Union"), Quad/Graphics, Inc. ("Quad") was required to contribute to a multiemployer pension plan, the GCIU-Employer Retirement Fund ("the Fund"). After the last of Quad's employees voted to decertify the Union as their bargaining representative in 2011, Quad completely withdrew from the Fund.

The Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381–1405, imposes liability on employers withdrawing from pension plans. The issue in this case is whether, in calculating Quad's withdrawal liability, the Fund correctly applied a credit for a prior partial withdrawal. The district court held that the Fund correctly applied the partial withdrawal credit set forth in 29 U.S.C. § 1386(b) against Quad's complete withdrawal liability before calculating the twenty-year limitation on

annual payments provided for in 29 U.S.C. § 1399(c)(1)(B). We agree, and affirm.

## I.  Background.

### A.  The MPPAA.

The MPPAA creates a disincentive for employers to withdraw from multiemployer pension plans. *Milwaukee Brewery Workers' Pension Plan v. Joseph Schlitz Brewing Co.*, 513 U.S. 414, 416–17 (1995).  It therefore imposes "withdrawal liability"—an "exit price equal to [the employer's] pro rata share of the pension plan's funding shortfall . . . distinct from the contributions required to be made by the plan agreements." *Carpenters Pension Tr. Fund for N. Cal. v. Moxley*, 734 F.3d 864, 870 (9th Cir. 2013) (alteration in original); *see also id.* ("Even when, upon an employer's withdrawal, that employer and every other participating employer has made every contribution that ERISA required of them, the plan may nonetheless be underfunded, resulting in withdrawal liability for the departing employer.") (citation omitted).  MPPAA withdrawal liability is either "partial"—imposed when "the employer permanently ceases to have an obligation to contribute under one or more but fewer than all collective bargaining agreements under which the employer has been obligated to contribute under the plan"—or "complete"— imposed when the employer "permanently ceases to have an obligation to contribute under the plan."  29 U.S.C. §§ 1383(a)(1), 1385(b)(2)(A)(i).

### B.  Facts.

Quad, a commercial printing business, acquired Quebecor World (USA) Inc. in 2010.  Under CBAs governing various facilities, Quebecor was obligated to

contribute to the Fund.  In 2009, employees at the Memphis Quebecor facility voted to decertify their union representation, and Quebecor ceased participating on their behalf.  Quad assumed the obligation to contribute to the Fund with respect to the remaining Quebecor facilities when it acquired Quebecor.  But, by 2011, employees at all other former Quebecor facilities had decertified their union representation, and Quad completely ceased its participation in the Fund.

In calculating Quad's liability for the 2011 complete withdrawal, the Fund gave Quad a credit for the partial withdrawal liability imposed after the 2009 Memphis facility withdrawal.  *See* 29 U.S.C. § 1386(b).[1]  The MPPAA also provides for a twenty-year limitation on annual payments made to discharge the employer's complete withdrawal liability.  *Id.* § 1399(c)(1)(B).[2]  The Fund applied that limitation *after* first applying the § 1386(b) credit against Quad's liability.  Quad disputed the sequence of calculations, claiming the twenty-year limitation should be

---

[1] Section 1386(b)(1) provides:

> In the case of an employer that has withdrawal liability for a partial withdrawal from a plan, any withdrawal liability of that employer for a partial or complete withdrawal from that plan in a subsequent plan year shall be reduced by the amount of any partial withdrawal liability (reduced by any abatement or reduction of such liability) of the employer with respect to the plan for a previous plan year.

[2] Section 1399(c)(1)(B) provides:  "In any case in which the amortization period . . . exceeds 20 years, the employer's liability shall be limited to the first 20 annual payments determined under [this section]."

calculated first, and then be reduced by the partial withdrawal credit.

### C. Procedural History.

The parties originally submitted the dispute to mandatory arbitration. *See* 29 U.S.C. §§ 1381(a), 1401(a)(1). The arbitrator found the Fund had correctly applied the credit before the debt forgiveness provision.

Quad sought review of the arbitrator's decision in the district court under 29 U.S.C. § 1401(b)(2), which allows for de novo review of the arbitrator's conclusions of law. *See CMSH Co. v. Carpenters Tr. Fund for N. Cal.*, 963 F.2d 238, 240 (9th Cir. 1992). The district court held that the Fund correctly sequenced the application of the partial withdrawal credit and the twenty-year limitation. We have jurisdiction of Quad's appeal from the district court's judgment under 28 U.S.C. § 1291 and affirm.[3]

## II. Discussion.

The MPPAA contains a "detailed set of rules for determining" the withdrawal liability charge. *Milwaukee Brewery*, 513 U.S. at 417–18. Three sections of the statute are at issue here: §§ 1381, 1386, and 1399.

### A. Section 1381.

The MPPAA provides step-by-step instructions for calculating employer withdrawal liability in 29 U.S.C. § 1381(b)(1). Section 1381(b)(1) instructs employers to

---

[3] In a memorandum disposition filed today, we also affirm the district court's holding that Quad again partially withdrew from the Fund in 2010 after union decertification at its Versailles, Kentucky, facility.

calculate "the allocable amount of unfunded vested benefits," and then make a series of adjustments to that sum:

> (A) first, by any de minimis reduction applicable under section 1389 of this title,
>
> (B) next, in the case of a partial withdrawal, in accordance with section 1386 of this title,
>
> (C) then, to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B) of this title, and
>
> (D) finally, in accordance with section 1405 of this title.

29 U.S.C. § 1381(b)(1).

### 1. The Section 1386 Adjustment.

The first adjustment at issue to this appeal is specified by § 1381(b)(1)(B), which provides for an adjustment "next, in the case of a partial withdrawal, in accordance with section 1386." *Id.* Section 1386(a) explains that "[t]he amount of an employer's liability for a partial withdrawal" is a pro rata fraction of the liability the employer would have faced for a complete withdrawal. 29 U.S.C. § 1386(a). Section 1386(b) then credits the employer for any charges previously imposed for a prior partial withdrawal and reduces the liability arising from the present withdrawal—whether complete or partial—accordingly. *Id.* § 1386(b).

### 2.  The Section 1399(c)(1)(B) Adjustment.

The next step in the process is described in § 1381(b)(1)(C), which provides for an adjustment "then, to the extent necessary to reflect the limitation on annual payments under section 1399(c)(1)(B)." Section 1399(c) contains an "unusual" method under which an employer can opt to satisfy a complete withdrawal liability, with interest, in installments. *Milwaukee Brewery*, 513 U.S. at 418.[4] In a traditional loan repayment, a "borrower would normally ask . . . what is the amount of each of my monthly payments" over a fixed time period. *Id.* The MPPAA, by contrast, "fixes the amount of each payment and asks how many such payments there will have to be." *Id.* Then, § 1399(c)(1)(B) "forgives all debt outstanding after 20 years." *Id.* at 419.

### B.  The Withdrawal Liability Calculation.

The question posed by Quad on appeal is whether the Fund properly applied the § 1386(b) prior partial withdrawal credit *before* calculating the § 1399(c)(1)(B) annual payment limitation. Section 1381 provides the clear answer to that question. The statute unambiguously provides that first after calculating the employer's complete withdrawal liability (and making any adjustment required under § 1381(b)(1)(A), a provision not at issue here), any adjustment for a partial withdrawal required by § 1386 comes "next." 29 U.S.C. § 1381(b)(1)(B). It is only after that, or "then," that the statute provides for calculation of the

---

[4] Alternatively, an employer can pay its entire liability in a lump sum, avoiding interest charges. 29 U.S.C. § 1399(c)(4); *see Bay Area Laundry & Dry Cleaning Pension Tr. Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 196–97 (1997).

debt forgiveness provision in § 1399(c)(1)(B). *Id.* § 1381(b)(1)(C).

"When the statutory language is unambiguous . . . , our inquiry comes to an end." *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 562 (9th Cir. 2016). "[W]e give effect to the unambiguous words Congress actually used." *Id.* But, we also note that Quad's position makes no practical sense. The § 1386(b) prior partial withdrawal credit reduces the employer's complete withdrawal liability. The § 1399(c)(1)(B) provision, which forgives debt, can only logically be applied after that withdrawal liability is calculated. *See Milwaukee Brewery*, 513 U.S. at 419. The § 1386(b) credit reduces the employer's debt, and an employer cannot be forgiven a debt for which it is not liable.

In arguing to the contrary, Quad cites a 1985 Pension Benefit Guaranty Corporation ("PBGC") opinion letter,[5] and an informal 2016 agency publication.[6] But, "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000). Rather, such interpretations are only "entitled to a measure of deference proportional to [their] power to persuade, in accordance with the principles set forth in *Skidmore v. Swift Co.*," 323 U.S. 134 (1944). *Tablada v. Thomas*, 533 F.3d 800, 806 (9th Cir. 2008). Under *Skidmore* review, we

---

[5] Pension Benefit Guar. Corp., Opinion Letter 85-4 (Jan. 30, 1985).

[6] Pension Benefit Guar. Corp., 2016 Enrolled Actuaries Meeting: Questions to the PBGC and Summary of Their Responses (Apr. 21, 2016).

consider "the interpretation's thoroughness, rational validity, consistency with prior and subsequent pronouncements, the logic and expertness of an agency decision, the care used in reaching the decision, as well as the formality of the process used." *Id.* (quoting *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1068 (9th Cir. 2003)) (quotation marks omitted).

Neither agency interpretation is persuasive. The 1985 opinion letter does not purport to rely on agency expertise, but merely misconstrues the plain language of § 1381. And, the 2016 publication disclaims its own value: it expressly states that it does "not represent the positions of the Pension Benefit Guaranty Corporation . . . and cannot be relied upon by any person for any purpose. Moreover, PBGC has not in any way approved this booklet or reviewed it to determine whether the statements herein are accurate or complete."

## III.    Conclusion.

Section 1381(b)(1) plainly dictates the order of operations in calculating withdrawal liability: the adjustments described in 29 U.S.C. § 1386, including the prior partial withdrawal credit in § 1386(b), precede the adjustment described in § 1399(c)(1)(B). 29 U.S.C. § 1381(b)(1)(B)–(C). We therefore affirm.

**AFFIRMED.**