**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE: SHAWN DEITZ,
                                    *Debtor*,

SHAWN DEITZ,
                                    *Appellant*,

v.

WAYNE FORD and PATRICIA FORD,
                                    *Appellees*.

No. 12-60036

BAP No.
11-1427

ORDER

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Pappas, Markell, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted April 10, 2014
Submission Withdrawn April 10, 2014
Resubmitted July 21, 2014
San Francisco, California

Filed July 28, 2014

Before: Barry G. Silverman, William A. Fletcher,
and Jay S. Bybee, Circuit Judges.

## SUMMARY[*]

### Bankruptcy Law

The panel issued an order affirming the Bankruptcy Appellate Panel's judgment affirming the bankruptcy court's judgment awarding money damages to creditors Wayne and Patricia Ford, and ordering that the Fords' claim be exempted from discharge.

The panel adopted the BAP's opinion as its own. The BAP held that, even after *Stern v. Marshall*, 131 S. Ct. 2594 (2011), the bankruptcy court had the constitutional authority to enter a final judgment determining both the amount of the Fords' damage claims against the debtor Shawn Deitz, and determining that those claims were excepted from discharge. The BAP also held that the bankruptcy court did not err in concluding that the debt owed by Deitz to the Fords was nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).

The panel noted that dischargeability actions are central to federal bankruptcy proceedings and are necessarily resolved during the process of allowing or disallowing claims against the state, and that the dischargeability determination therefore constitutes a public rights dispute that the bankruptcy courts may decide.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Alexander B. Wathen (argued), Wathen & Associates, Houston, Texas, for Appellant.

Thomas H. Armstrong (argued), Law Office of Thomas H. Armstrong, Fresno, California, for Appellees.

**ORDER**

Chapter 7 debtor Shawn Deitz seeks review of the Bankruptcy Appellate Panel's ("BAP") judgment affirming the bankruptcy court's judgment (1) awarding money damages to creditors Wayne and Patricia Ford; and (2) ordering that the Fords' claim be excepted from discharge. We have jurisdiction under 28 U.S.C. § 158(d), and we affirm.[1]

This court reviews decisions of the BAP de novo and applies the same standard of review that the BAP applied to the bankruptcy court's ruling. *In re Boyajian*, 564 F.3d 1088, 1090 (9th Cir. 2009). In our review, we conclude that the well-reasoned majority opinion of the BAP, *In re Deitz*, 469 B.R. 11 (B.A.P. 9th Cir. 2012), correctly sets forth the law and the application of that law as appropriate in this case. We therefore adopt it as our own, and we attach it as an appendix to this order.

---

[1] Following oral argument, we withdrew submission of this appeal pending issuance of a decision by the United States Supreme Court in *Executive Benefits Ins. Agency v. Arkison*, No. 12-1200. The Supreme Court issued its opinion on June 9, 2014.

We further note that dischargeability actions are "central to federal bankruptcy proceedings," and they are "necessarily resolved during the process of allowing or disallowing claims against the estate." *Carpenters Pension Trust Fund for N. Cal. v. Moxley*, 734 F.3d 864, 868 (9th Cir. 2013). "The dischargeability determination . . . . therefore constitutes a public rights dispute that the bankruptcy courts may decide." *Id.*

**AFFIRMED.**

**Appendix**

FILED

APR 23 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

ORDERED PUBLISHED

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:                              )   BAP No.   EC-11-1427-PaDMk
                                    )
SHAWN DEITZ,                        )   Bk. No.   08-13589
                                    )
              Debtor.               )   Adv. No.  08-01217
_____)
                                    )
SHAWN DEITZ,                        )
                                    )
              Appellant,            )
                                    )
v.                                  )   O P I N I O N
                                    )
WAYNE FORD and PATRICIA FORD,       )
                                    )
              Appellees.            )
_____)

Argued and Submitted on March 22, 2012
at Sacramento, California

Filed - April 23, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Hon. Richard T. Ford, Bankruptcy Judge, Presiding

_____

Appearances:    Alexander B. Wathen argued for Appellant Shawn
                Deitz.  Thomas H. Armstrong argued for Appellees
                Wayne Ford and Patricia Ford.

Before:   PAPPAS, DUNN and MARKELL, Bankruptcy Judges.

PAPPAS, Bankruptcy Judge:

Chapter 7[1] debtor Shawn Deitz ("Deitz") appeals the bankruptcy court's judgment awarding damages to creditors Wayne ("Ford") and Patricia Ford (together, the "Fords"), and declaring the debt represented by the judgment excepted from discharge under § 523(a)(2)(A), (a)(4), and (a)(6). We AFFIRM.

**FACTS**

Deitz was a sometime general building contractor in the Fresno area. Mr. Ford had served in the U.S. Army, where he was injured; he is disabled and has not worked since that injury. Mrs. Ford is a registered nurse.

In late August or September 2006, the Fords met Deitz at the Applegate Project housing development, where Deitz was building new homes. The Fords informed Deitz that they were planning to build a handicap-assisted home. They all toured the house Deitz had under construction, and further discussed the Fords' building plans.

Over the next two months, the parties had several more meetings. During their conversations, Deitz represented to the Fords that he could build a new house to the specifications required by the Americans with Disabilities Act ("ADA") and which would comply with Veterans Administration ("VA") standards for providing financial support for the homeowners. Deitz told the Fords that he had previously worked on construction projects

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

meeting the ADA and VA standards. Deitz also represented on several occasions to the Fords that he was a former Marine, and thus a fellow veteran with Mr. Ford; that his mother was a nurse, as was Mrs. Ford; and that he had worked as a pharmacy technician at the VA Hospital where Ford had been treated. Perhaps most importantly, both of the Fords would later testify that Deitz represented that he was a licensed general contractor in good standing with the State of California.

Deitz gave the Fords a proposal bid to build their home on September 25, 2006. It offered to build a 4,170 square foot house with additional improvements, for a total of 7,050 square feet. Deitz proposed to build the house for the total price of $444,105.00 ($106.50 per square foot). The Fords agreed, and a final contract was entered into by the parties incorporating substantially the same terms. The contract bears Deitz' signature directly above what is shown as his state contractor's license number. However, it is not disputed that on the date that the contract was signed by the Fords, November 7, 2006, Deitz' license was not in good standing, and had been suspended. Indeed, the license was not reinstated by the state until January 3, 2007.[2]

During the period of construction and up through trial of this action, the Fords paid Deitz a total of $511,800.00 to build the home. Deitz admitted that he failed to complete the

[2] The parties appear to agree that at some point before signing of the contract, Deitz informed the Fords that his license was suspended, but that, he told them, the suspension would be lifted before the contract was signed. It is uncontroverted that Deitz' license was suspended at the time of the contract signing and would not be reinstated until the following month. It is also uncontroverted that Deitz' license was suspended again several times, and was ultimately revoked, during construction.

-3-

construction. According to the expert testimony of John Thompson ("Thompson"), a former senior investigator with the California Contractors' State License Board, the house was approximately 65 percent completed. Additionally, the Fords testified that they made repeated demands to Deitz that he provide them an accounting and itemization, supported by receipts and invoices, to show how he had disbursed the monies he had been paid for the construction. The bankruptcy court would ultimately determine that Deitz never gave the Fords an appropriate accounting, but instead, that Deitz had "simply submitted asserted [construction cost] overages without proof, and unsigned change orders."

Deitz filed a chapter 7 bankruptcy petition on June 20, 2008. His schedules list the Fords as creditors holding a claim in an unknown amount.

The Fords commenced an adversary proceeding against Deitz on September 9, 2008. The complaint alleged that their claims for damages against Deitz arising from the construction of the house should be excepted from discharge under § 523(a)(2)(A), (a)(4) and (a)(6). As to the § 523(a)(2)(A) claim, the Fords alleged that Deitz knowingly made intentional material misrepresentations to them with the intent to deceive the Fords, upon which they justifiably relied in retaining Deitz, and that the Fords suffered damages as a result of Deitz' fraud. As to § 523(a)(4), the Fords alleged that through fraud, trick and device, with a preconceived design and intent, Deitz misappropriated monies from the Fords. And as to § 523(a)(6), the Fords alleged that Deitz' actions were willful, malicious, and the proximate cause of the Fords' financial damages.

-4-

# 10                          IN RE: DEITZ

Deitz, who represented himself in the bankruptcy case and adversary proceeding,[3] filed an answer to the complaint denying all allegations.

Before a trial could be held, the Fresno County District Attorney filed a criminal complaint against Deitz on March 23, 2009. People v. Deitz, case no. F07-9086 (Superior Court Fresno County). Four of the counts in that complaint alleged that Deitz was guilty of grand theft of personal property in connection with building contract transactions with the Fords and three other parties on their respective properties. Deitz was found not guilty of those four counts by a jury on October 25, 2010. However, Deitz was convicted on a fifth count for the crime of Contracting Without License in violation of CAL. BUS. & PROF. CODE § 7028.[4]

After several continuances to allow the criminal proceeding to be completed, the trial in the adversary proceeding took place on April 4, 5 and 11, 2011. Although the Fords submitted a pretrial brief, Deitz did not, yet the bankruptcy court took note of a pretrial statement made by Deitz that he never intended to

---

[3] Deitz appeared pro se in both the bankruptcy and adversary proceeding, but has been represented by counsel in the criminal proceeding and in this appeal.

[4] 7028. Contracting without license; first conviction; second, third, and subsequent convictions; limitation of actions; restitution

(a) It is a misdemeanor for a person to engage in the business or act in the capacity of a contractor within this state without having a license therefor, unless the person is particularly exempted from the provisions of this chapter. CAL. BUS. & PROF. CODE § 7028 (2012).

defraud or willfully injure the Fords. At the trial, over 500 pages of documentary evidence were admitted, and the bankruptcy court heard testimony from five witnesses (the Fords, Deitz, Thompson, and Terry Freeman, a representative of a supplier of doors to the Fords' project). As reported later in its findings of fact, the court evaluated the credibility of each witness.

At the close of trial, the bankruptcy court took the issues under advisement; it entered its formal Findings of Fact and Conclusions of Law on July 28, 2011. In addition to making over sixty separate, detailed findings of fact, the court listed forty conclusions of law in support of its decision that Deitz' debt to the Fords was nondischargeable under § 523(a)(2), (4) and (6).

As to Fords' § 523(a)(2)(A) fraud claim, the bankruptcy court found and concluded that Deitz knowingly made false representations to the Fords that he was a licensed contractor in October-November 2006 when he contracted with them, and that he misrepresented that he would complete the construction of the home according to ADA, VA and local building code standards. The court found that these misrepresentations were false, intentional, and made to deceive the Fords into entering into the building contract. Finally, the court found that the Fords justifiably relied on Deitz' misrepresentations, and that the Fords' money damages established via the evidence were proximately caused by these intentional misrepresentations.

As to the § 523(a)(4) claim, the bankruptcy court found that the evidence established that Deitz was given significant funds by the Fords, and that Deitz took possession of those funds for a particular purpose (i.e., to construct the Fords' home). The

-6-

court found that Deitz failed to use those funds to build and complete the home, and that Deitz' conduct amounted to fraud. Consequently, the court concluded that Deitz had committed embezzlement as contemplated by § 523(a)(4).

As to the § 523(a)(6) claim, the court concluded that Deitz fraudulently induced the Fords to enter into the building contract at a time when he knew he was not licensed as a contractor. Deitz further deceived the Fords into making progress payments on the project with continued misrepresentations about the status of work, and that he did so with the intent to obtain substantial funds from the Fords, and that the financial injuries the Fords suffered were foreseeable. As a result, the bankruptcy court concluded that Deitz' actions constituted a willful and malicious injury to the Fords for purposes of § 523(a)(6).

On July 28, 2011, the bankruptcy court entered a money judgment in favor of the Fords and against Deitz in the amount of $386,092.76 and ordered that the judgment was excepted from discharge in Deitz' bankruptcy case pursuant to § 523(a)(2)(A), (a)(4) and (a)(6).

Deitz filed a timely appeal on August 5, 2011.

                              **JURISDICTION**

The bankruptcy court had subject matter jurisdiction over this action under 28 U.S.C. § 1334(b), something which Deitz apparently concedes. In addition, there is no dispute that this action was a core proceeding under 28 U.S.C. § 157(b)(2)(I). In this appeal, however, Deitz challenges the constitutional authority of the bankruptcy court to enter a final judgment against him in the adversary proceeding, relying upon the Supreme

Court's recent decision in Stern v. Marshall, ___ U.S. ___, 131 S.Ct. 2594 (2011). We discuss this contention below. Finally, the Panel has jurisdiction over this appeal under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court had the constitutional authority to enter a final judgment determining the amount of the Fords' claims against Deitz, and the dischargeability of those claims.

Whether the bankruptcy court erred in ruling that Deitz' debt to the Fords was nondischargeable under § 523(a)(2), (4) and (6).

## STANDARD OF REVIEW

We review the constitutionality of a federal statute de novo. United States v. Vongxay, 594 F.3d 1111, 1114 (9th Cir. 2010), cert. denied, 131 S. Ct. 294 (2010).

Whether a claim is excepted from discharge under § 523(a) presents mixed issues of law and fact and is reviewed de novo. Carrillo v. Su (In re Su), 290 F.3d 1140, 1142 (9th Cir. 2002).

De novo means review is independent, with no deference given to the trial court's conclusion. Barclay v. Mackenzie (In re AFI Holding, Inc.), 525 F.3d 700, 702 (9th Cir. 2008).

## DISCUSSION

**I.    The bankruptcy court had the constitutional authority to enter a final judgment against Deitz.**

In 28 U.S.C. § 1334(b), Congress granted nonexclusive subject matter jurisdiction to the district court over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Congress also authorized each district court to refer such proceedings to a bankruptcy judge. 28 U.S.C.

-8-

§ 157(a).[5] The bankruptcy court, in turn, may hear and determine such proceedings, 28 U.S.C. § 157(b)(1), and if the particular action involves a "core proceeding" as defined in 28 U.S.C. § 157(b)(2), it may enter "appropriate orders and judgments subject to [appellate] review under section 158 of [title 11]."

Here, the Fords' adversary complaint sought a determination that their claims against Deitz were excepted from his discharge in bankruptcy under several subsections of § 523(a). Clearly, then, because such claims arose under the Bankruptcy Code, subject matter jurisdiction existed in the district court, and by its referral, in the bankruptcy court, as well.

Moreover, "determinations as to the dischargeability of particular debts . . ." are expressly included in the statutory list of core proceedings. 28 U.S.C. § 157(b)(2)(I). As a result, Congress has provided that the bankruptcy court may enter a final judgment on exception to discharge claims, subject only to appellate review. 28 U.S.C. § 157(b)(2)(I). Indeed, the bankruptcy court, via the reference from the district court, has the exclusive authority to determine the dischargeability of debts under § 523(a)(2), (4) and (6). See § 523(c) (the debtor shall be discharged from a debt of the kind specified in § 523(a)(2), (4) and (6) unless, after notice and a hearing, "the [bankruptcy] court determines such debt to be excepted from discharge . . . ."); Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 869-70 (9th Cir. 2005).

---

[5] The district court in the Eastern District of California has indeed referred such proceedings to the bankruptcy court. See E.D. Cal. General Order 161 (July 10, 1984).

Deitz does not dispute the bankruptcy court's subject matter jurisdiction over this action, nor that the adversary proceeding was a core proceeding. Instead, Deitz argues that, under Stern, the bankruptcy court's entry of a final judgment in this case was an unconstitutional act. We disagree.

In Stern, the Supreme Court held that, as an Article I court, a bankruptcy court "lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim" in a bankruptcy case. Stern, 131 S.Ct. at 2620. Put another way, though 28 U.S.C. § 157(b)(2)(C) authorized the bankruptcy court to decide the merits of the bankruptcy estate's counterclaim against a creditor, such an exercise of judicial power by an Article I bankruptcy judge violated the Constitution, because "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Id. at 2618.

But the Stern decision addressed the constitutionality of a particular subsection of 28 U.S.C. § 157(b)(2) (i.e., "counterclaims by the estate against persons filing claims against the estate"), and only then, under the particular facts of that case. In Stern, Chief Justice Roberts made it clear that any constitutional bar to the exercise of judicial power by a bankruptcy court erected by that decision was a very limited one:

> We conclude today that Congress, in one isolated respect, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the

-10-

process of ruling on a creditor's proof of claim. Stern, 131 S.Ct. at 2620. Indeed, in describing the impact of its decision, the majority predicts that the Court's opinion in Stern should have few "practical consequences," and that the majority did "not think that the removal of [such] counterclaims . . . from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute . . . ." 131 S.Ct. at 2619-20.

Though by its own edict Stern is a narrow decision, restricted in impact to only certain types of core proceedings, Deitz relies upon Stern to launch a frontal attack on the bankruptcy courts' authority to enter a final judgment in a prototypical bankruptcy context, a dischargeability action. In this appeal, Deitz asks the Panel to reverse the judgments of the bankruptcy court concluding that the Fords' claims against Deitz are excepted from discharge under § 523(a)(2)(A), (4) and (6). In Deitz' view, the three exception to discharge claims advanced in the Fords' adversary complaint were, at bottom, simply disputes between private parties about a common law fraud claim and their dischargeability in bankruptcy. Although Deitz provides a creative spin on the "public versus private rights" analysis in Stern, reduced to its essence, his position is that the bankruptcy court's judgment entered in this case was a violation of Article III of the Constitution. Deitz Op. Br. at 16, 20. He argues,

> In this case Appellant argues that Stern v. Marshall makes the judgment in this case unconstitutional as a violation of the life tenure and salary anti-diminution provisions of Article III. A non-Article III judge cannot litigate dischargeability and issue a common law fraud judgment which means entering a final judgment because . . . a final judgment requires a judge appointed under Article III.

-11-

Deitz Op. Br. at 17.

Deitz has not cited even a single post-Stern decision supporting his broad statement that only Article III judges may enter final judgments in core dischargeability actions.[6] Even in the few cases we have located suggesting an expansive interpretation of Stern, the courts generally limit their concerns to those actions in bankruptcy courts that seek to augment the bankruptcy estate at the expense of third parties, primarily fraudulent conveyance avoidance actions, because those legal actions seek through a money judgment to take the defendant's property and that adjudication can only be made by a member of the independent Article III judiciary. See e.g., Meoli v. Huntingdon Nat'l Bank (In re Teleservices Group, Inc.), 456 B.R. 318, 323 n.59 (Bankr. W.D. Mich. 2011) (holding that the bankruptcy court could not adjudicate the debtor's fraudulent conveyance proceeding against a bank because "only an Article III judge can enter a judgment associated with the estate's recovery of contract and tort claims to augment the estate. . . if the relief sought by the estate included the involuntary recovery of property from a third party"); In re Canopy Financial, Inc., 2011 WL 3911082 (Bankr. N.D. Ill. Sept. 1, 2011) (holding that the bankruptcy court could not adjudicate through final orders a fraudulent conveyance

---

[6] The only authorities Deitz cites are pre-Stern cases and reports going back over 20 years. Deitz gives extended attention to the Report of the National Bankruptcy Review Commission, NBRC § 4.11(B) & (C) (1997), that advocated a transition from the current system to an all-Article III bankruptcy system. Although that report did call into question the constitutionality of the current bankruptcy courts, it also presented arguments in favor of the current courts. In any event, its proposals were never adopted, so we question how useful this information is to our analysis of Stern v. Marshall.

-12-

action); In re Blixseth, 2011 WL 3274042 (Bankr. D. Mont. Aug. 1, 2011) (pursuant to Stern v. Marshall, giving parties fourteen days in which to request that the district court withdraw the reference to the bankruptcy court of such action, or the court would dismiss the fraudulent conveyance claims for lack of subject matter jurisdiction), but see Samson v. Blixseth (In re Blixseth), 463 B.R. 896 (Bankr. D. Mont. 2012) (modifying prior holding).

In contrast to the decisions of these courts, a significant majority of decisions rendered since Stern follow Chief Justice Robert's admonition that the decision be applied narrowly. See Burtch v. Seaport Capital, LLC (In re Direct Response Media, Inc.), 2012 WL 112503 * 10 (Bankr. D. Del. 2012) ("The Court adopts the Narrow Interpretation and holds that Stern only removed a non-Article III court's authority to finally adjudicate one type of core matter, a debtor's state law counterclaim asserted under § 157(b)(2)(C). By extension, the Court concludes that Stern does not remove the bankruptcy courts' authority to enter final judgments on other core matters[.]"); Spanish Palms Mktg. LLC v. Kingston (In re Kingston), 2012 Bankr. LEXIS 755 at *8 (Bankr. D. Idaho Feb. 27, 2012) ("The Supreme Court's recent decision in Stern v. Marshall . . . does not prohibit a bankruptcy court from entering a final judgment resolving issues under the Bankruptcy Code, which would be completely resolved in the bankruptcy process, or that flow from a federal statutory scheme. See 131 S.Ct. at 2611-15. Plaintiffs' exception-to-discharge claims are premised solely on provisions of the Code, will be completely resolved in the bankruptcy process, and the Court has constitutional authority to issue a final judgment in regards to

those claims."); In re Ambac Fin. Grp., Inc., 457 B.R. 299, 308 (Bankr. S.D.N.Y. 2011) ("Stern v. Marshall has become the mantra of every litigant who, for strategic or tactical reasons, would rather litigate somewhere other than the bankruptcy court."); In re Salander O'Reilly Galleries, 453 B.R. 106, 115-16 (Bankr. S.D.N.Y. 2011) (Stern "should be limited to the unique circumstances of that case" and "does not remove from the bankruptcy court its jurisdiction over matters directly related to the estate that can be finally decided in connection with restructuring debtor and creditor relations"); In re Heller Ehrman LLP, 2011 WL 4542512, at *1 (Bankr. N.D. Cal. 2011) ("Withdrawal of the reference at this time would amount to an unnecessary extension of the narrow holding in Stern, would be an inefficient use of judicial resources by overburdening the district court and foregoing the services of a bankruptcy court ready, willing and able to do its job and would distort the traditional way to challenge and decide the constitutionality of a federal statute."); In re Safety Harbor Resort and Spa, 456 B.R. 703, 714 (Bankr. M.D. Fla. 2011) (holding that Stern does not preclude bankruptcy courts from adjudicating core claims, but rather that it is a "narrow" holding that Congress exceeded the limits of Article III in "one isolated respect"); In re Olde Prairie Block Owner, LLC, 457 B.R. 692, 698 (Bankr. N.D. Ill. 2011) (Stern has a "narrow effect"); In re Am. Bus. Fin. Servs., Inc., 457 B.R. 314, (Bankr. D. Del. 2011) (holding that bankruptcy courts have the authority to decide matters "directly and conclusively related to the bankruptcy" and granting summary judgment to defendants on avoidance and state law claims brought by trustee) (citations

-14-

20 IN RE: DEITZ

omitted).

Based on our review of the case law, we conclude, as one bankruptcy court explained, "there can be little doubt that [a bankruptcy court], as an Article I tribunal, has the constitutional authority to hear and finally determine what claims are non-dischargeable in a bankruptcy case." Farooqui v. Carroll (In re Carroll), 464 B.R. 293, 312 (Bankr. N.D. Tex. 2011). As the Farooqui court explained,

> Determining the scope of the debtor's discharge is a fundamental part of the bankruptcy process. As noted by the court in Sanders v. Muhs (In re Muhs), 2011 Bankr. LEXIS 3032, 2011 WL 3421546 (Bankr. S.D. Tex Aug. 2, 2011), "[t]he Bankruptcy Code is a public scheme for restructuring debtor-creditor relations, necessarily including the 'exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts.'" 2011 Bankr. LEXIS 3032, [WL] at *1 (citing Central Va. Cmty. College v. Katz, 546 U.S. 356, 363-64, 126 S. Ct. 990, 163 L. Ed. 2d 945 (2006)). Congress clearly envisioned that bankruptcy courts would hear and determine all core proceedings, 28 U.S.C. § 157(b)(1), which include, as relevant here, "determinations as to the dischargeability of particular debts." 28 U.S.C. § 157(b)(2)(I). The Supreme Court has never held that bankruptcy courts are without constitutional authority to hear and finally determine whether a debt is dischargeable in bankruptcy. In fact, the Supreme Court's decision in Stern clearly implied that bankruptcy courts have such authority when it concluded that bankruptcy courts had the constitutional authority to decide even state law counterclaims to filed proofs of claim if the counterclaim would necessarily be decided through the claims allowance process. Stern, 131 S. Ct. at 2618.

Id.

Deitz not only challenges the constitutional authority of the bankruptcy court to enter final judgments on discharge claims, he also argues that the bankruptcy court is without the constitutional power to liquidate the amount of such claims.

Again, this contention lacks support in the case law. In contrast, at least four decisions specifically address, in light of Stern, the authority of the bankruptcy court to liquidate a creditor's state law claim, and to enter a final money judgment, in actions to determine nondischargeability under § 523(a).

In In re Ueberroth, a bankruptcy court believed that, in view of Stern, it did not have authority to enter a monetary judgment with a nondischargeability judgment, and submitted a report and recommendation to the district court so it could do so. Mich. St. Univ. Fed. Credit Union v. Ueberroth (In re Ueberroth), 2011 Bankr. LEXIS 5136 (Bankr. W.D. Mich. Dec. 19, 2011). Within a matter of days, the district court held that, "[W]hile the Court acknowledges the uncertainty Stern created regarding the constitutional authority of bankruptcy courts to enter final judgment in certain proceedings, the Court does not believe Stern affects the Bankruptcy Court's authority to enter a default judgment in this action." The district court considered the unnecessary report and recommendation of the bankruptcy court to be harmless error and simply entered judgments in accordance with that report as a matter of judicial economy. Mich. St. Univ. Fed. Credit Union v. Ueberroth (In re Ueberroth), 2012 U.S Dist. LEXIS 12 at * 1 (W.D. Mich. January 3, 2012).

The Farooqui case, discussed above, analyzed the issue under the public rights exception: "[A] right closely integrated into a public regulatory scheme may be resolved by a non-Article III tribunal." Farooqui, 464 B.R. at 312 (quoting Thomas v. Union Carbide Agricultural Prods. Co., 473 U.S. 568, 593 (1985)). The Farooqui court then reasoned that liquidating state law claims is

-16-

## 22     IN RE: DEITZ

"closely integrated" into the bankruptcy code because the court has to determine the claim before it can logically determine that it is nondischargeable. Id.

In Dragisic v. Boricich (In re Boricich), 464 B.R. 335, 336-37 (Bankr. N.D. Ill. 2011), the bankruptcy court noted that adjudications of the dischargeability of debts have usually been accompanied by entry of a final money judgment in favor of a prevailing creditor under applicable Seventh Circuit authority, N.I.S. Corp. v. Hallahan (In re Hallahan), 936 F.2d 1496, 1508 (7th Cir. 1991). However, the court felt it should reexamine this principle in light of Stern. Finding no reason to change its practice, the court reasoned that,

> this action contrasts with Stern in being an action directly under and defined by the Bankruptcy Code to determine nondischargeability rather than being independent of bankruptcy law. . . . Stern left intact the authority of a bankruptcy judge to fully adjudge a creditor's claim. In this case, the claim was an adversary proceeding against debtor to bar dischargeability of a debt due to Plaintiff. Therefore, the authority to enter a final dollar judgment as part of the adjudication of nondischargeability, as recognized in Hallahan, was not impaired by Stern. Quite clearly it was necessary here to determine the amount of debt in order to determine the debt that is nondischargeable. Therefore, under the clear exception recognized by Stern, final judgment is authorized because such resolution is required to resolve the creditor's claim.

In re Boricich, 464 B.R. at 337.

And in In re Soo Bin Kim, 2011 WL 2708985 (Bankr. W.D. Tex. July 11, 2011), the bankruptcy court held that the bankruptcy court had the power to enter a final judgment concerning an exception to discharge as well as to liquidate the underlying claim. In response to the debtor's arguments that Stern bars the court's authority, the bankruptcy court observed that "the

-17-

[debtor] over reads that case and its application to this proceeding. Even if the [debtor] were right, however, the court would be compelled to follow existing Fifth Circuit precedent as set out in In re Morrison, 555 F.3d 473, 478-79 (5th Cir. 2009)." Id. at * 2 n.2.

The holdings in Boricich and Kim are particularly relevant in this appeal. Both of those cases relied on the existing precedent of their courts of appeals. Indeed, the In re Soo Bin Kim case held that, even if Stern did overturn the Fifth Circuit precedent in In re Morrison, the bankruptcy court was required to follow the circuit precedent until that court of appeals overturned its earlier precedent.

The Ninth Circuit has also expressly held, pre-Stern, that a bankruptcy court may enter a monetary judgment on a disputed state law fraud claim in the course of determining that the debt is nondischargeable. Cowen v. Kennedy (In re Kennedy), 108 F.3d 1015 (9th Cir. 1997). The facts in Kennedy are remarkably similar to those in this case. There, the debtor was a real estate developer who made representations to the buyers of a home that he had relevant construction experience, had a high quality of workmanship, and even made the same representation as Deitz in this appeal that the resulting home would be a "showplace." Id. at 1016. Kennedy sold a house to the buyers but within the year the buyers filed suit in state court alleging fraud. Kennedy filed a bankruptcy petition under Chapter 7, and the buyers brought an adversary proceeding seeking a determination that Kennedy owed a nondischargeable debt to them for fraud in the sale of the home. After a two-day trial, the bankruptcy court

determined that the plaintiff suffered $100,000 in damages as a result of the developer's fraud and it was nondischargeable under § 523(a)(2)(A). Id. at 1017.

On appeal, Kennedy argued that the bankruptcy court had no jurisdiction to enter judgment on the fraud because it was a state law cause of action. The Ninth Circuit held that the bankruptcy court could liquidate the debt and enter a final judgment in conjunction with determining that the debt was excepted from discharge under § 523(a). Id. at 1018. The Ninth Circuit noted that its decision was consistent with all its sister circuits that had considered the matter at that time. Porges v. Gruntal & Co. (In re Porges), 44 F.3d 159, 163-65 (2d Cir. 1995); Atassi v. McLaren (In re McLaren), 990 F.2d 850, 853-54 (6th Cir. 1993), reaff'd, Longo v. McLaren (In re McLaren), 3 F.3d 958, 965-66. (6th Cir. 1993); In re Hallahan, 936 F.2d at 1507-1508; Vickers v. Home Indem. Co., Inc., 546 F.2d 1149, 1151 (5th Cir. 1977).[7] The court was "particularly persuaded by the analysis of one bankruptcy judge" which it quoted:

> If it is acknowledged as beyond question that a complaint to determine dischargeability of a debt is exclusively within the equitable jurisdiction of the bankruptcy court, then it must follow that the bankruptcy court may also render a money judgment in an amount certain without the assistance of a jury. This is true not merely because equitable jurisdiction attaches to the entire cause of action but more importantly because it is impossible to separate the determination of dischargeability function from the function of fixing the amount of the non-dischargeable debt.

---

[7] In Johnson v. Riebesell (In re Riebesell), the Tenth Circuit joined with the Kennedy court and the other circuits in concluding that the bankruptcy court may enter a monetary judgment as part of a dischargeability proceeding. 586 F.3d 782, 793 (10th Cir. 2009).

Id. at 1017-18 (quoting In re Devitt, 126 B.R. 212, 215 (Bankr. D. Md. 1991)). The Ninth Circuit held: "We conclude, in conformity with all of the circuits which have considered the matter, that the bankruptcy court acted within its jurisdiction in entering a monetary judgment against Kennedy in conjunction with a finding that the debt was non-dischargeable." In re Kennedy, 108 F.3d at 1018. The Court of Appeals reaffirmed this position in In re Sasson, 424 F.3d at 870.

In this appeal, Deitz would have the Panel ignore this binding precedent on the grounds that it is inconsistent with his interpretation of Stern — in other words, that Stern overturns this circuit's authority that the bankruptcy court may enter final judgments on both nondischargeability and liquidation of debt. We decline that invitation.

The Panel, like all courts of this circuit, must adhere to the holdings in published opinions of the Court of Appeals unless those opinions are overturned by the Supreme Court. United States v. Martinez-Rodriquez, 472 F.3d 1087, 1093 (9th Cir. 2007). Of course, the critical question for the Panel is how to determine if a Supreme Court decision does in fact overturn the circuit precedent. After all, the Ninth Circuit has also taught us that "overturning a long-standing precedent is never to be done lightly[.]" United States v. Heredia, 483 F.3d 913, 918 (9th Cir. 2007).

The Ninth Circuit has given us the necessary guidance on that question. In Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), the court considered the question of the scope of the absolute immunity of family-service social workers where its

-20-

# 26　IN RE: DEITZ

existing precedent appeared inconsistent with a later Supreme Court decision. Id. at 900. In Gammie, a three-judge panel had decided it was bound by the earlier circuit opinion. The court convened an en banc panel to "clarify our law concerning the sometimes very difficult question of when a three-judge panel may reexamine normally controlling circuit precedent in the face of an intervening United States Supreme Court decision." Id. at 892. After reviewing the long history of the relationship between circuit panel decisions and Supreme Court decisions, the Ninth Circuit concluded,

> We hold that in circumstances like those presented here, where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a three-judge panel should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled."

Id. at 893 (emphasis added). The circuit went on to advise that, "[i]n future cases of such clear irreconcilability, a three-judge panel of this court and district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of this court as having been effectively overruled." Id. at 900.[8] By extending this rule to the district courts, we infer that the Court of Appeals would intend that the Panel apply the clearly irreconcilable rule before rejecting an existing circuit opinion.

---

[8] The "clearly irreconcilable" rule is still good law, as indicated by recent three-judge circuit panel rulings applying it before affirming or rejecting existing precedents. See, e.g., United States v. Ayala-Nicanor, 659 F.3d 744, 748 (9th Cir. 2011); Perfect 10, Inc. v. Google, Inc., 653 F.3d 976, 980 (9th Cir. 2011); Greensprings Baptist Christian Fellowship Tr. v. Cilley, 629 F.3d 1064, 1068 (9th Cir. 2010); Atl. Nat'l Tr. LLC v. Mt. Hawley Ins. Co., 621 F.3d 931, 940 (9th Cir. 2010).

Given the ample authorities that counsel against a broad interpretation of Stern, we decline to conclude that Kennedy is "clearly irreconcilable" with the Supreme Court's decision. On the contrary, the analysis in Stern, and its expressly limited application to specific types of otherwise core proceedings (i.e., state law counterclaims by the estate against third parties), leads us to conclude that Stern is altogether reconcilable with Kennedy's endorsement of the bankruptcy court's authority to enter final judgments in actions to determine dischargeability and for liquidation of a creditor's claim. There are no state common law actions involved in this case, nor any third parties involved. Exception to discharge claims arise solely under title 11 and could not exist outside the federal bankruptcy system. Simply put, exceptions to discharge and liquidations of related claims are examples of the bankruptcy courts doing what they are supposed to do.

For all these reasons, we conclude that the holding in Stern is not clearly irreconcilable with the existing precedent in Kennedy that a bankruptcy court may liquidate a debt and enter a final judgment in conjunction with finding the debt nondischargeable. Consequently, we consider ourselves bound by the decision in Kennedy until the Court of Appeals indicates Kennedy is no longer good law.

We hold that, even after Stern, the bankruptcy court had the constitutional authority to enter a final judgment determining both the amount of Fords' damage claims against Deitz, and determining that those claims were excepted from discharge.

II.   The bankruptcy court did not err in concluding that the debt owed by Deitz to the Fords was nondischargeable under § 523(a)(2)(A), (a)(4) and (a)(6).

### A.   § 523(a)(2)(A)

To prevail on a claim under section 523(a)(2)(A), a creditor must demonstrate five elements: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.  Oney v. Weinberg (In re Weinberg), 410 B.R. 19, 35 (9th Cir. BAP 2009) (citing Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000)).  "The creditor bears the burden of proof to establish all five of these elements by a preponderance of the evidence."  Weinberg, 410 B.R. at 35 (citing Slyman, 234 F.3d at 1085).

In the statement of issues in his opening brief, Deitz challenges the bankruptcy court's factual findings about the intent and justifiable reliance prongs of § 523(a)(2)(A). However, Deitz did not present arguments regarding the justifiable reliance prong in his briefs.

The bankruptcy court found that "[Deitz'] misrepresentations were intentional and designed specifically to deceive and induce [the Fords] for the sole purpose of being retained to build Plaintiff's home and profit thereby."  In making this finding, the bankruptcy court had heard testimony that, based upon his statements to them, the Fords believed that Deitz had resolved any problems with his contractors license before they entered into the

-23-

building contract with him. That a contractor was properly licensed was important to the Fords because it was a condition for their receipt of funds from the VA. The court clearly found that Deitz was not licensed at the time of executing the contract. Additionally, the evidence showed that Deitz' contractor license had been suspended six times, and was finally revoked, during his construction of the Fords' house. The court had testimonial evidence from Ford and Thompson, as well as documentary evidence, that Deitz had made misrepresentations regarding his license and skills to several other parties by which he had induced them to enter into construction contracts that, like the Ford case, had failed. Evidence of the habit of a person, or of a routine or practice, is relevant to prove that the conduct of a person on a particular occasion was in conformity with their habit or routine practice. FED. R. EVID. 406. The bankruptcy court also determined that Deitz misrepresented to the Fords that he would complete the construction of the home according to ADA, VA and county standards.

In this appeal, Deitz does not deny that he was not licensed at the time of signing the contract, or that he suffered numerous suspensions and ultimate revocation of the license during the period of constructing the Fords' home.

Intent to defraud in the context of a dischargeability proceeding is a question of fact. In re Kennedy, 108 F.3d at 1018. The bankruptcy court's factual findings are reviewed for clear error. In re Ashley, 903 F.2d 599, 602 (9th Cir. 1990). And, because the bankruptcy court's factual findings were based in part on its assessment of the credibility of witnesses, those

findings are entitled to deference from the Panel.  Rule 8013.

Based upon the testimony of the witnesses and documentary evidence, the bankruptcy court properly determined that Deitz acted with the intent to deceive the Fords, and with the intent to keep money that should otherwise have been used in the construction.  We therefore conclude that the bankruptcy court did not clearly err in finding that Deitz' misrepresentations to the Fords were made with the requisite intent to deceive them for purposes of § 523(a)(2)(A).

As to justifiable reliance, the bankruptcy court found that Deitz intended to gain the trust of the Fords by highlighting his military career, the common nursing occupation of Mrs. Ford and Deitz' mother, and Deitz' experience as a tech at the VA medical facility where Ford had been treated.

Whether the Fords justifiably relied on Deitz' misrepresentations is a question of fact.  Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1456 (9th Cir. 1992).  As noted above, the bankruptcy court's factual findings are reviewed for clear error.  In re Ashley, 903 F.2d at 602.  Given the evidentiary record, and affording due deference to the bankruptcy judge's evaluation of the credibility of witnesses, we conclude that the bankruptcy court did not clearly err in determining that the Fords justifiably relied on the misrepresentations of Deitz.

Because Deitz has not challenged the Fords' proof on the other three elements for an exception to discharge under § 523(a)(2)(A), and in light of the bankruptcy court's extensive findings and conclusions regarding those prongs in its decision,

-25-

we conclude that the bankruptcy court did not err in determining that Deitz' debt to the Fords was excepted from discharge under § 523(a)(2)(A).

### B.   § 523(a)(4) and (6)

In his opening brief, Deitz failed to discuss the other two statutory bases relied upon by the bankruptcy court in holding that his debt to the Fords was excepted from discharge — § 523(a)(4) and (6). In recent decisions, the Ninth Circuit has reaffirmed its long-standing instruction that, "An appellate court reviews only issues which are argued specifically and distinctly in a party's opening brief." Cruz v. Int'l Collection Corp., ___ F.3d ___, 2012 WL 742337 (9th Cir. March 8, 2012); Christian Legal Soc'y Chapter of Univ. of Cal. v. Wu, 626 F.3d 483, 485 (9th Cir. 2010) (same); Brownfield v. City of Yakima, 612 F.3d 1140, 1149 n.4 (9th Cir. 2010) (same).

After the Fords noted Deitz' failure to argue the latter two discharge issues in their responsive brief, Deitz in his reply brief asserted that intent was lacking under § 523(a)(2)(A), intent is an element under all three discharge exceptions, and therefore disproving fraudulent intent under § 523(a)(2)(A) suffices as a defense to all three exception to discharge claims. However, Deitz presented no authority or reasoned analysis to support this assertion.

Even had it been timely presented in his opening brief (which it was not), Deitz' conclusory statement does not meet minimum acceptable standards for arguing an issue "specifically and distinctly." Deitz' challenges to the bankruptcy court's findings and conclusions concerning the § 523(a)(4) and (6) claims have

been waived.

## CONCLUSION

We AFFIRM the judgment of the bankruptcy court fixing the amount of Fords' damages and determining that Deitz' debt to the Fords is excepted from discharge under §523(a)(2)(A), (a)(4) and (a)(6).

Markell, Bankruptcy Judge, concurring:

I join in the opinion. I fully agree that Kennedy and Sasson control this case's outcome. I write this concurrence, however, to note how Stern v. Marshall, 131 S.Ct. 2594 (2011), may have reshaped the jurisdictional landscape in nondischargeability actions.

Both Kennedy and Sasson were written well before Stern. When viewed in light of Stern, this case highlights some potential jurisdictional flaws in Kennedy and Sasson, as well as some of the challenges Stern presents when allocating decision making authority between district courts and bankruptcy courts.

### Congress's Power to Provide a Discharge

Initially, it is beyond doubt that Congress has the power to provide for a discharge in bankruptcy. U.S. CONST. art. 1, § 8, cl. 4.[1] As Congress has plenary power to regulate the bankruptcy

---

[1] One of the most enduring definitions of Congress's power under the Bankruptcy Clause is that the power:

extends to all cases where the law causes to be distributed, the property of the debtor among his creditors: this is its least limit. Its greatest, is a

(continued...)

-27-

discharge – a legislative status in an area unknown to the common law – Congress can generally delegate the implementation of the discharge to non-Article III judges.[2] Put another way, since there is no common law or other nonstatutory right to the discharge of a debt, it is within Congress's power to determine how to dispense and bestow the benefit.

**Court's Subject Matter Jurisdiction Over the Discharge**

An essential element of such power is the subject matter jurisdiction to implement it, and the subject matter jurisdiction to determine nondischargeability is provided by § 1334(b) of title 28. Section 1334(b) grants subject matter jurisdiction to the District Courts over matters which "arise in," "arise under," or

---

[1](...continued)
discharge of the debtor from his contracts. And all intermediate legislation, affecting substance and form, but tending to further the great end of the subject-distribution and discharge-are in the competency and discretion of Congress.

In re Klein, 42 U.S. (1 How.) 277, 281 (1843) (Catron, J., sitting as circuit justice; case reported in a note to Nelson v. Carland, 42 U.S. (1 How.) 265 (1843), inserted therein "as being of general interest") (emphasis supplied). Klein was indicated as the source of one of the "oft-quoted" definitions of the bankruptcy power in Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 588 n.18 (1935).

[2] Although Congress cannot "withdraw from [Art. III] judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty," Murray's Lessee v. Hoboken Land & Improvement Co., 18 How. 272, 284 (1856), the discharge was not such a "matter." See Hanover Nat. Bank v. Moyses, 186 U.S. 181, 188 (1902) ("The subject of 'bankruptcies' includes the power to discharge the debtor from his contracts and legal liabilities, as well as to distribute his property. The grant to Congress involves the power to impair the obligation of contracts, and this the states were forbidden to do."). Cf. Pobreslo v. Joseph M. Boyd Co., 287 U.S. 518, 524 (1933) ("[T]he discharge of a bankrupt from his debts constitutes the very essence of the Bankruptcy Law . . . .").

-28-

are "related to" a bankruptcy. Nondischargeability matters, such as the one here, were unknown at common law, and thus can only "arise under" the Bankruptcy Code.

Section 157(a) of title 28 allows the District Courts to refer discharge matters to the bankruptcy courts, and § 157(b)(2)(I) then classifies the exercise of the power referred as a core determination which Article I bankruptcy courts can "hear and determine" and enter final judgments. As reflected in the legislative history, "[b]y a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11." H.R. REP. No. 95-595, at 445 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6401.

### Entering Money Judgments Against the Debtor

The analysis is somewhat different, however, when analyzing the ability to hear and determine the underlying nonbankruptcy claims themselves, and to finalize that determination with the entry of an enforceable money judgment. Both subject matter jurisdiction and the constitutional power to decide the matter are implicated.

### Subject Matter Jurisdiction to Enter a Money Judgment Against a Debtor

First, subject matter jurisdiction. Unlike nondischargeability determinations, claims for money damages do not "arise in" or "arise under" the Bankruptcy Code. They exist independent of the bankruptcy process. They are claims against the debtor, not against the estate. As a consequence, at least with respect to § 1334, the only remaining ground for subject

matter jurisdiction is that such claims are "related to" the bankruptcy. See Ralph Brubaker, On the Nature of Federal Bankruptcy Jurisdiction: a General Statutory and Constitutional Theory, 41 WM. & MARY L. REV. 743, 914-15 (2000).

The Ninth Circuit applies the so-called Pacor test to determine "related to" jurisdiction. If the determination at issue, in any conceivable way, could affect the bankruptcy estate, then such jurisdiction exists. Vacation Village, Inc. v. Clark County, Nev., 497 F.3d 902, 911 (9th Cir. 2007) (citing Pacor Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984)), for the proposition that "where the cause of action is between third parties, the test for 'whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy'"); Sasson v. Sokoloff (In re Sasson), 424 F.3d 864, 868-69 (9th Cir. 2005) ("A bankruptcy court's 'related to' jurisdiction is very broad, 'including nearly every matter directly or indirectly related to the bankruptcy.'") (quoting Mann v. Alexander Dawson (In re Mann), 907 F.2d 923, 926 n.4 (9th Cir. 1990)). But I question whether that is the case here. Unless related to the claims resolution process, the liquidation of a nondischargeability claim against the debtor does not necessarily affect the estate.

That point is driven home here as Deitz's case is a no-asset case in which creditors were instructed not to file claims.[3] See

---

[3] Were it otherwise, the filing of the nondischargeability complaint would likely be held to be an informal proof of claim, depending on the prayer for relief. This would bring those matters relevant to the resolution of the debtor-creditor relationship squarely before the court. See Pac. Res. Credit Union v. Fish (In re Fish), 456 B.R. 413, 416 (B.A.P. 9th Cir. 2011) (proof of claim issue raised through a debtor's objection to a claim as late-filed).

FED. R. BANKR. P. 2002(e) (allowing trustee to notify creditors to not file claims if it appears that there will be no dividends paid). There was no claims resolution process here because there was no bankruptcy estate to administer and then distribute. As a consequence, the liquidation or allowance of the claim that will never be paid has absolutely no effect on the estate. There thus can be no "related to" jurisdiction. See Brubaker, supra, 41 WM. & MARY L. REV. at 916-18 & n.603.

Sasson adverts to this conundrum, and attempts to settle jurisdiction on a pragmatic basis by merging supplemental jurisdiction into "related to" jurisdiction. Sasson accomplishes this through pointing out that the facts related to the determination of nondischargeability and the facts necessary to liquidate the claim arise from the same nucleus of facts. Sasson, 424 F.3d at 869 ("the bankruptcy court's 'related to' jurisdiction also includes the district court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 'over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.'") (quoting Montana v. Goldin (In re Pegasus Gold Corp.), 394 F.3d 1189, 1195 (9th Cir. 2005)). Compare Susan Block-Lieb, The Case Against Supplemental Bankruptcy Jurisdiction: a Constitutional, Statutory, and Policy Analysis, 62 FORDHAM L. REV. 721 (1994) with Brubaker, supra.

It would be a waste of judicial resources to require a second trial on the same facts, especially since the bankruptcy court's determination of the essential nucleus of facts would likely have

issue preclusive effect on whatever court ultimately liquidated the claim. See Katchen v. Landy, 382 U.S. 323, 334 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."); see also Veal v. Am. Home Mortgage Servicing, Inc. (In re Veal), 450 B.R. 897, 918 (B.A.P. 9th Cir. 2011). But Sasson does not refer to matters of issue preclusion, arguing by analogy to supplemental jurisdiction only, and citing to § 105 of the Bankruptcy Code to assist in the argument.[4]   Sasson, 424 F.3d at 868.

Sasson's reference to § 105 may help here, even though it is not a jurisdictional statute in the traditional sense, as the close nexus between the nondischargeability claims and the liquidation of the amount of those claims is undeniable. See id. But the efficacy of the reference to § 105 requires analysis beyond the scope of this concurrence.

A Bankruptcy Court's Power to Enter a Money Judgment Against the Debtor

This concern over the proper basis of subject matter jurisdiction bleeds into Stern concerns. If supplemental jurisdiction as augmented by § 105 is the best argument for a District Court's jurisdiction to liquidate a claim in a

---

[4] The Ninth Circuit Court of Appeals has held District Courts have supplemental jurisdiction under 28 U.S.C. § 1367 when hearing bankruptcy matters in the first instance, Security Farms v. Int'l Bhd. of Teamsters, 124 F.3d 999, 1008 n.5 (9th Cir. 1997). It has also, as noted in Sasson, 424 F.3d at 869, approved bankruptcy courts' exercise of § 1367 supplemental jurisdiction over "state tort and contract claims" not otherwise connected to the bankruptcy so long as those claims share a "common nucleus of operative facts" with "related to" claims and "would ordinarily be expected to be resolved in one judicial proceeding" along with the "related to" claims. In re Pegasus Gold Corp., 394 F.3d at 1194-95.

nondischargeability setting, one has to wonder if Stern would allow the delegation of that power to an Article I bankruptcy court. Stern seems to suggest that, in the absence of consent, a bankruptcy court's power to enter a final judgment is necessarily dependent on whether that bankruptcy court is exercising a power constitutionally conferred by Congress to an Article I tribunal. After all, what Stern found unconstitutional was the statutory grant of the power to hear and determine a counterclaim based on some, but not all, of the facts bound up in the original action against the estate.[5]

Stern did not, however, question a bankruptcy court's authority to hear and determine state law claims that "stem[] from the bankruptcy itself or would necessarily be resolved in the claims allowance process," id. at 2618, at least as long as that determination is a necessary incident of the claims resolution process. Stern seems to call into question the bankruptcy court's exercise of jurisdiction in any instance when that necessity is lacking. Here, if Sasson's augmented "related to" jurisdiction is suspect, then so too is the constitutional ability for an Article I tribunal to enter a final judgment on a common law claim when the sole jurisdictional basis is § 1367 of title 28.

But even if that problem is resolved, there remain other concerns. Although most disputes in bankruptcy are linked to or bound up in claim determinations which are so related to the bankruptcy power that Congress can authorize Article I tribunals

---

[5] "The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim." 131 S. Ct. at 2620.

to hear them,[6] there are other, common, situations that may cause concern. Section 502(b) of the Bankruptcy Code, for example, is full of situations in which nonbankruptcy claims, otherwise valid outside of bankruptcy, are limited in bankruptcy. For example, § 502(b)(2) of the Bankruptcy Code permits parties in interest to object to unmatured interest as a claim against the estate (except for oversecured creditors). As a result, determination of postpetition interest (especially if a variable rate) on claims against the debtor would be a determination not within the scope of the claims allowance process. Similarly, claims by landlords for fraud in procuring a lease would be limited by § 502(b)(6)'s limitation on landlords' claims against the estate, with amounts in excess of the limitations being valid against the debtor but unnecessary to the administration of the bankruptcy case. Other examples can be imagined for each paragraph of § 502(b) that places federal limitations on otherwise valid state law claims.

Further complicating this analysis is the potential inability of an Article I tribunal to make binding determinations on critical factual issues with respect to nondischargeability claims. Under Crowell v. Benson, 285 U.S. 22 (1932), Congress can generally delegate final factfinding to an Article I legislative tribunal with respect to those matters within the purview of the statutory scheme unless the facts are "fundamental" or

---

[6] In response to arguments that the decision would "create significant delays and impose additional costs on the bankruptcy process," Chief Justice Roberts noted in Stern that the Court did not believe that "removal of counterclaims . . . from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a 'narrow' one." 131 S. Ct. at 2619-20.

-34-

"jurisdictional" as to the authority of the tribunal. See Stern, 131 S.Ct. at 2612 n.6 ("Although the Court in Crowell went on to decide that the facts of the private dispute before it could be determined by a non-Article III tribunal in the first instance, subject to judicial review, the Court did so only after observing that the administrative adjudicator had only limited authority to make specialized, narrowly confined factual determinations regarding a particularized area of law and to issue orders that could be enforced only by action of the District Court."). An argument could be made that facts essential to determining the full amount of creditors' nonbankruptcy claims against the debtor are fundamental in Crowell's sense, or that they are at least made outside the "specialized, narrowly confined factual determinations" Stern refers to in note 6. As a consequence, Stern raises the issue of whether a bankruptcy court has to defer deciding postpetition accrued interest and excessive landlord claims, among others, unless the parties otherwise consent to its jurisdiction.

These issues, however, can only be decided by the Ninth Circuit if and when it reconsiders Kennedy and Sasson. I thus concur.